UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- )
JAMES PIERCE,                                       )
                                                    )
                            Plaintiff,              )       **ECF Case No. 08-civ-1948 (SCR)**
                                                    )
            - against -                             )       **DECLARATION OF LISA L.**
                                                    )       **SHREWSBERRY IN SUPPORT**
HIGHLAND FALLS-FORT                                 )       **OF DEFENDANTS' MOTION**
MONTGOMERY CENTRAL SCHOOL                           )       **TO DISMISS PURSUANT TO**
DISTRICT, PHILIP B. ARBOLINO, former )              **FED. R. CIV. P. 12(b)(6)**
Superintendent of Schools, and LOUIS                )
TROMBETTA, High School Principal,                   )
sued in their individual capacities,                )
                                                    )
                            Defendants.             )
-------------------------------------------------- )

LISA L. SHREWSBERRY, being duly sworn, deposes and says:

1.      I am an attorney admitted to practice in the State of New York and before this Court.
I am a partner with the law firm of Traub Lieberman Straus & Shrewsberry LLP, attorneys for
defendants in the above-captioned action.  As such, I am familiar with the facts, pleadings and
proceedings in the instant matter.

2.      This declaration is submitted in support of defendants' motion to dismiss plaintiff's
complaint pursuant to Fed. R. Civ. P. 12(b)(6).

3.      A true and correct copy of the February 26, 2008 complaint filed in the instant action
is annexed hereto as Exhibit "A".

4.      A true and correct copy of plaintiff's tenure notice is annexed hereto as Exhibit "B."

5.    A true and correct copy of plaintiff's correspondence to Dr. Arbolino discussing the arrest is annexed hereto as Exhibit "C."

6.    A true and correct copy of the correspondence from the School District to plaintiff requesting that he submit to the medical examinations is annexed hereto as Exhibit "D."

7.    A true and correct copy of Dr. Medina's report and the laboratory test results are annexed hereto as Exhibit "E."

8.    A true and correct copy of Mr. Trombetta's memo is annexed hereto as Exhibit "F."

9.    True and correct copies of plaintiff's letters to Mr. Trombetta regarding his new assignment as teacher in charge of the in-school suspension room and Mr. Trombetta's response are annexed hereto as Exhibit "H."

10.    True and correct copies of memoranda pertaining to issues arising during the 2006-2007 school year are annexed hereto as Exhibit "I."

11.    True and correct copies of the June 21, 2007 and July 3, 2007 notices to plaintiff regarding his transferred from teacher in charge of the in-school suspension room at the high school, to special education teacher for the resource room/inclusion students, grades five through eight at the Highland Falls Middle School is annexed hereto as Exhibit "J."

12.    A true and correct copy of plaintiff's attendance record is annexed hereto as Exhibit "K."

13.    True and correct copies of memoranda pertaining to these incidents arising during the 2007-2008 school year are annexed hereto as Exhibit "L."

14.    A true and correct copy of the Order, with Notice of Entry, of the October 31, 2007

decision of the Honorable Justice William J. Giacomo is annexed hereto as Exhibit "M."

Dated: Hawthorne, New York
       March 31, 2008

                              TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

                              By:    Lisa L. Shrewsberry (LS 1597)
                                     Veronica L. Reed (VR 1790)
                                     Mid-Westchester Executive Park
                                     Seven Skyline Drive
                                     Hawthorne, New York 10532
                                     (914) 347-2600
                                     *Attorneys for Defendants*

TO:    Helen G. Ullrich (HU 6597)
       Bergstein & Ullrich, LLP
       15 Railroad Avenue
       Chester, New York 10918
       (845) 469-1277
       *Attorneys for Plaintiff*

**EXHIBIT A**



03/07/2008 03:26 PM 1850B_314

MAR 5 2008
JHD

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern    . District of    New York

JAMES PIERCE,

### SUMMONS IN A CIVIL ACTION

V.

HIGHLAND FALLS-FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT, et al

CASE NUMBER:    *JUDGE ROBINSON*

# 08 CIV. 1948

TO: (Name and address of Defendant)

HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL
DISTRICT, PHILIP B. ARBOLINO and LOUIS TROMBETTA: c/o
Highland Falls – Fort Montgomery Central School District, Rt. 9W,
Highland Falls, New York, 10928

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

BERGSTEIN & ULLRICH, LLP
Attorneys for Plaintiff
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

# J. MICHAEL McMAHON

CLERK

DATE    02 | 27 | 2008

(By) DEPUTY CLERK

03/07/2008 03:26 PM 1850B_314

**08 CIV. 1948**

*JUDGE ROBINSON*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____X

JAMES G. PIERCE,

        Plaintiff,

  -against-

HIGHLAND FALLS-FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT,
PHILIP B. ARBOLINO, former Superintendent of Schools,
and LOUIS TROMBETTA, High School Principal,
sued in their individual capacities,

        Defendants.

_____X

**COMPLAINT**

**ECF Case**

**Jury Trial Demanded**

FILED

FEB 27 2008

USDC WP SDNY

## I.    INTRODUCTION

1.    Plaintiff JAMES G. PIERCE brings this lawsuit against his employer, defendants

    HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL DISTRICT,

    PHILIP ARBOLINO, former Superintendent of Schools and LOUIS

    TROMBETTA, High School Principal, alleging violation of the Americans With

    Disabilities Act, 42 U.S.C. 12101, §504 of the Rehabilitation Act and the Equal

    Protection Clause of the Fourteenth Amendment to the United States Constitution,

    for discriminating against him based upon their belief and perception that he is

    disabled.

## II.    PARTIES

2.    Plaintiff James G. Pierce is a 55-year old male residing in Wappinger Falls,

    Dutchess County, New York.

3.    Defendant Highland Falls-Fort Montgomery Central School District (hereinafter

"the District") is a public entity organized pursuant to the laws of the State of New York. The District receives federal funding. It may sue and be sued.

4.    Defendant Philip B. Arbolino was the District's Superintendent of Schools at all times relevant to this matter. He is sued in his individual capacity.

5.    Defendant Louis Trombetta is the District's High School Principal. He is sued in his individual capacity.

## III.    JURISDICTION AND VENUE

6.    As all events occurred within the County of Orange, venue is properly found in this district.

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(3) & (4), the Americans With Disabilities Act, the Rehabilitation Act and 42 U.S.C. §1983.

8.    Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. Fewer than 90 days have elapsed since he received his Notice of Right to Sue.

## IV.    FACTS

9.    Plaintiff is a New York State licensed teacher certified to teach Special Education and History at the secondary level.

10.    In September 2003, the District hired plaintiff as a Special Education teacher at James I. O'Neill High School. Plaintiff also chaired the Special Education Department and directed school plays.

11.    In May 2005, the District granted plaintiff tenure.

12.    In or about 2005, the District appointed defendant Arbolino Superintendent of

Schools.

13. In or about March 2006, while plaintiff was directing rehearsals for the school play, a parent confronted him, via e-mail, objecting to his removal of a student from the production. This parent threatened that someone might "force" plaintiff to reinstate the student and that parents were ready to protest to the school board "en masse." Thereafter this parent complained to Board of Education member David DeLeo.

14. In or about April 2006, Board of Education member Ned Kopald sent a memorandum to Arbolino making reference to plaintiff's "alleged addiction."

15. At the end of the 2006 school year, plaintiff was advised that he was reassigned to the "In-School Suspension" room and would not be directing the school play the following year. Plaintiff was not given any reason for this action.

16. Plaintiff was also removed from his position as Special Education teacher and department chair without being given any reason for this action.

17. In or about June 2006, plaintiff was directed to contact a physician retained by the District for a medical examination. Again, plaintiff was not told the reason for this action.

18. In his report to Arbolino, the District's physician noted that plaintiff was taking Hydrocodone 10, a painkiller for pain associated with bilateral hip replacements plaintiff had in 2001 and 2003. In addition, the physician noted that plaintiff was using Valium 10mg. every other day for two months. The physician erroneously stated that plaintiff had no prescription for the Valium.

19. In or about September 2006, in a memo to Trombetta, Arbolino discussed steps to

comply with the Board of Education's directive to carefully monitor plaintiff and keep a close watch on his actions. At no time did defendants discuss with plaintiff the district's alleged concerns or the reasons therefor.

20.   In or about October 2006, plaintiff was again directed to contact the same physician for another examination. He was not told the reason for this action.

21.   Plaintiff provided to the District evidence that his orthopedist had prescribed painkillers in response to his legitimate and ongoing chronic pain and that he was in counseling due to his divorce and death of his son.

22.   Nevertheless, in an apparent effort to induce plaintiff to resign, the District refused to permit him to return to the classroom and offered no rational explanation for its actions against him.

23.   Throughout the 2006-2007 school year, plaintiff was assigned to the In-School Suspension room, where he taught no classes but merely monitored the assignments and conduct of students who had been suspended for infractions. In prior years, this room had not been assigned to a licensed teacher and, whenever plaintiff was absent, a teacher's aide was assigned to substitute for him.

24.   Moreover, throughout that school year, Trombetta micromanaged plaintiff's conduct and barraged him with continual memoranda baselessly criticizing his behavior.

25.   In or about spring 2007, plaintiff received his New York State certification to teach Social Studies at the secondary level.

26.   In or about June 2007, plaintiff was advised that he would be returned to classroom teaching in fall 2007. No explanation was given to him concerning the

03/07/2008 03:26 PM 1850B_314

change in his status.

27.    In September 2007, plaintiff returned to the classroom to teach Special Education

Math.  He was again subjected to a barrage of baseless criticisms and removed

from teaching a number of classes.

28.    Through their writings and conduct, defendants have made clear that they regard

plaintiff as having a physical or mental impairment that substantially limits a

major life function such as working or cognitive ability, within the meaning of the

Americans With Disabilities Act.

29.    Defendants have made no effort to conduct a good faith discussion with plaintiff

about any concerns they might have with respect to his health and/or his teaching

but instead have undermined his career and destroyed his reputation.

30.    As a consequence of defendants' illegal actions, plaintiff has suffered loss of

career opportunities and reputation, lost wages and pension benefits and extreme

emotional distress, including extreme public humiliation, constant anxiety and

other symptoms of extreme distress.

## V.    CAUSES OF ACTION

31.    Plaintiff hereby incorporates the allegations in paragraphs 1-29 as if fully restated

herein.

32.    Defendant District willfully and knowingly violated the Americans With

Disabilities Act, 42 U.S.C. 12101 and §504 of the Rehabilitation Act by

discriminating against plaintiff based upon its belief and perception that he is

disabled.

33.    Defendants Arbolino and Trombetta willfully and knowingly violated the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution by discriminating against plaintiff based upon their belief and perception that he is disabled.

**WHEREFORE**, plaintiff prays that this Honorable Court:

    a.    accept jurisdiction over this matter;

    b.    empanel a jury to fairly hear and decide this matter;

    c.    award to plaintiff back and front pay;

    d.    award to plaintiff compensatory damages sustained as a result of defendants' discriminatory practices;

    e.    award to plaintiff punitive damages for defendants' willful and outrageous conduct; and

    f.    award any other relief deemed just and proper.

Dated:    February 26, 2008
        Chester, New York

Respectfully submitted,

S/_____
HELEN G. ULLRICH (HU 6597)

BERGSTEIN & ULLRICH, LLP
Counsel for plaintiffs
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277

# EXHIBIT B



**HIGHLAND FALLS – FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT**
Post Office Box 287, Highland Falls, New York 10928

*A Place Where Talents Are Developed*

May 18, 2005

Mr. James Pierce
James I. O'Neill High School
Highland Falls, New York  10928

Dear Jim:

Congratulations!  I am pleased to write this letter acknowledging your tenure appointment by the Board of Education of the Highland Falls-Fort Montgomery Central School District at their meeting of May 12, 2005.  Your appointment is in the area of Special Education and is effective upon your return to our District in September 2005.

You are a credit to our District and certainly an asset for every student whose life you have touched during your probationary period with us.  I look forward to a long association with you as we continue to strive for excellence for our students.

The Board of Education and I would like to invite you and your family for cake and coffee on Wednesday, May 25, 2005 at 7:00 PM in the library at O'Neill High School to mark this occasion.

Yours truly,

*Bruce H. Crowder*

Bruce H. Crowder
Superintendent of Schools

**EXHIBIT C**

Please take
w/ Jim Pierce

Dr Arbolino,

Attached is the material you requested regarding the unfortunate events of this past July 21.

I have made a copy for you of the statement and some of the documents I intend to present to the court at the hearing which takes place on October 18; Court is in Ellenville, N.Y.

Thank you for your kindness and patience in this matter. Please rest assured that these events in no way affect my ability to perform my duties at O'Neill.

Respectfully,

James X. Pierce

9/8/05

Your honor, may I be permitted to read a short statement into the record concerning my character and background? I would also like to present to the court a few documents attesting to the veracity of my statements.

My name is James G. Pierce. I am employed as a teacher by the Highland Falls-Ft. Montgomery school district in Orange County. Because of our close proximity to West Point, about 20% of our student body have parents in the military.

These parents take the education
of their children extremely seriously,
and I am honored to be a
Department Coordinator at my school.
May I approach the bench and
present the Court with my
teaching licenses in both Special
Education and Social Studies, as
well as proof of my status as
coordinator, a letter of reference
from my assistant principal and
a congratulatory letter from our
district superintendent acknowledging
my receipt of tenure.

I would like to point out to the court that I have a pristine driving record.

On the day in question, July 21, 2005, my son and I were driving from our home in East Fishkill to spend a few days at the Pinegrove Dude Ranch.

When I was pulled over by the Officers, it was not because they themselves had witnessed any traffic infraction on my part. Rather, they claimed to have received a complaint from an anonymous

civilian that I had been driving erratically. Again, I emphasize that the officers themselves did not witness any inappropriate behavior on my part.

I offer to the court a copy of the Times-Herald Record dated July 22, 2005. The paper shows that on the previous day, while my son and I were driving to Pinegrove, the New York Mets were in the midst of a stirring 12-0 daytime victory over Philadelphia.

I maintain that what the anonymous civilian mistook for erratic driving, was actually excitement being expressed by my *** *** *** *** *** *** scored run after run. I will not deny that we were "slapping each other five" and otherwise manifesting celebratory motions inside the vehicle. To an independent observer, our euphoria may well have been mistaken for something "out of control.

Regarding my use of medication, I would like to present to the court

evidence that I have had double hip replacement surgery. This medication is often prescribed for me to deal with residual pain from those operations that often manifests itself when I sit for a relatively long length of time as one does while driving.

I present the prescription to the court, hydrocodine, along with copies of my membership in various boxing organizations, such as the N.Y.S. Ath. Comm. where I act in the capacity of a professional judge

One of the documents I have shown the Court is the Madison Square Garden identification card for an event held this past June. The purpose of submitting these documents is to prove to the Court that despite occasional use of this legal, prescribed, medication, I am entrusted by the State of New York to participate in determining the outcome of multi-million dollar professional sporting events. I maintain there is no evidence that shows my ability is impaired by the prescribed use of this medication.

Your honor, I would like to thank you for your patience in allowing me to present my arguments to the court.

In closing, I would like to make 2 final points regarding the events of that day:

The first being that despite the courtesy and professionalism of the police officers, I feel they were wrong to have handcuffed me in clear view of my 12 year old son. At all times I was polite, cooperative, and non-confrontational. My faculties

were clear and my speech unim-
paired. It was a humiliating and
upsetting experience that affected my
boy deeply. I was so lucid, in
fact, that the officers did not
even deem it necessary to administer
a "breath-o-lyzer" test.

My ~~and~~ final point ~~is~~ ~~that~~ Is
a question I respectfully pose to
the arresting officers: " Did either
of you actually witness the in-
fractions of which I am charged?
Since the answer to this question ~~is~~
must be "No", I ask this Court to
dismiss the charges against me.











**TO: Dr. Arbolino**
**FROM: James G. Pierce**
**RE: Disposition of Case**
**DATE: May 4, 2006**

Dr. Arbolino,

Attached is a copy of the **Certificate of Disposition** of my recent court case in Ellenville, New York.

As the certificate clearly shows, I was fined $300 for unlicensed operation of a motor vehicle. This is neither a felony nor a midemeanor, and I will not even have "points" added to my driver's license.

I enclose information on how you can reach my attorney should you require further information.

It is certainly a relief to have this unfortunate event behind me. It shows that mistakes can be made by even the most competent law enforcement officials, and how easy it is to "make a mountain out of a molehill."

Thank you very much for your interest and concern regarding the disposition of this matter.

*James G. Pierce*

James G. Pierce

cc: Mr. Trombetta
    Mr. Mallon

    Thomas K. Petro, Esq.

# CERTIFICATE OF DISPOSITION

**STATE OF NEW YORK**
**ULSTER COUNTY**

**ELLENVILLE VILLAGE COURT**
**CRIMINAL PART**

PEOPLE OF THE STATE OF NEW YORK

     VS.

JAMES G. PIERCE;  Defendant

CASE NO: 05070165

    Date of Birth:  12/01/1952          JC501 no: 31077728P
    Date of Arrest:  07/21/2005         NYSID no:
  Disposition Date:    /  /

| Section Charged | Section Disposed | Ticket No & Description | Disposition | Fine | Civil-Fee | Surchg |
|---|---|---|---|---|---|---|
| VTL 1192 04 | VTL 0511 01A | LS139558 6 AGG UNLIC OPER3 | Fine/fee | 300.00 | 0.00 | 55.00 |

Upon a proper request for an official statement of disposition,
I certify that the above named defendant having appeared before
this court was charged as shown above.  Each of the charges was
disposed of as indicated.


Dated: The 2nd day of May 2006

                           Hon. MATTHEW PARKER

NOTE: A copy of the request will be filed with this certificate
in the case records.

CAUTION: This information must not be divulged if the case is
sealed or where the defendant has been adjudicated a youthful
offender.


Copies:  ____ Court,  ____ Defendant,  ____ Agency,  ____ DA

THOMAS K. PETRO, ESQ.
ATTORNEY-AT-LAW
71 MAIDEN LANE
KINGSTON, NEW YORK 12401
(845) 338-1162

**EXHIBIT D**



### HIGHLAND FALLS – FORT MONTGOMERY
### CENTRAL SCHOOL DISTRICT
Post Office Box 287, Highland Falls, New York 10928

*A Place Where Talents Are Developed*

Superintendent of Schools: Philip B. Arbolino, Ed.D.

June 2, 2006

Mr. James Pierce
James I. O'Neill High School
21 Morgan Road
Fort Montgomery, NY 10922

**HAND DELIVERED**

**Re:    Medical Examination**

Dear Mr. Pierce:

This is to advise you that the Board of Education has adopted a resolution directing you to submit to a medical examination with a physician chosen by the District, pursuant to Education Law 913. A copy of the resolution is enclosed herewith.

Accordingly, you are directed to contact as soon as possible the School District physician, Dr. Carlos Medina, 127 Main Street, Highland Falls, NY (845-446-4040) to schedule an appointment for an examination to be conducted no later than June 16, 2006. Dr. Medina will render a written report to the Board, which may include a recommendation for further examination by a medical specialist.

Thank you for your attention.

Yours truly,

Philip B. Arbolino
Superintendent of Schools

cc:    Board of Education
        Robert H. Cohen, Esq.

Encl:  BOE Resolution

Page 6, May 22, 2006

That upon the recommendation of the Superintendent, the Board of Education appoint the following as volunteer Crew coaches to the end of the season:

| | |
|---|---|
| Mike Swanson | Ron McConnell |
| Tom Mulyca | Kurt Walling |
| Dr. VanAiken | |

Motion: Mrs. Donnery    Seconded: Mrs. Lavelle    Approved

A motion was made that upon the recommendation of the Superintendent, the Board of Education rescind the Letter of Intent to retire from Rachelle Harmer.

Motion: Mr. DeLeo    Seconded: Mrs. Lavelle    Approved

That upon the recommendation of the Superintendent, be it resolved that pursuant to Education Law 913 , the person identified in the attached is hereby directed to submit to a medical exam with a physician chosen by the district. **(See attachment #3).**

Motion: Mr. DeLeo    Seconded: Mrs. Donnery    Approved

At 9:40 P. M., a motion was made by Mr. DeLeo to **enter into Executive Session.** It was seconded by Mrs. Crill and carried unanimously.

At 10:55 P. M., a motion was made by Mr. Kopald to **end the Executive Session and enter into regular session.** It was seconded by Mr. D'Onofrio and carried unanimously.

There being no further business to come before the Board, the meeting was adjourned at **11:00 P. M.** upon the motion made by Mrs. Crill seconded by Mrs. Lawless and carried with all members present voting in favor thereof.

Respectfully submitted,

Joanne DiBlasi, District Clerk

**The next Board of Education Meeting will be
Thursday, June 8, 2006
Public Budget Hearing 7:00 P.M.
Recognition of Tenured Teachers and Top Ten Seniors 7:30 P.M.
Public Meeting at 8:00 P. M.
in the James I. O'Neill High School Library**



**HIGHLAND FALLS – FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT**

Post Office Box 287, Highland Falls, New York 10928

*A Place Where Talents Are Developed*

Superintendent of Schools: Philip B. Arbolino, Ed.D.

November 9, 2006

Mr. James Pierce
James I. O'Neill High School
21 Morgan Road
Fort Montgomery, NY 10922

**HAND DELIVERED**

**Re:    Medical Examination**

Dear Mr. Pierce:

This is to advise you that the Board of Education has adopted a resolution directing you to submit to a medical examination pursuant to Education Law 913. A copy of the resolution is enclosed herewith.

Accordingly, you are directed to contact as soon as possible the School District physician, Dr. Carlos Medina, 127 Main Street, Highland Falls, NY (845-446-4040) to schedule an appointment for a follow-up examination to be conducted no later than November 22, 2006.  Dr. Medina will render a written report to the Board, which may include a recommendation for further examination by a medical specialist.

Thank you for your attention.

Yours truly,

Philip B. Arbolino
Superintendent of Schools

cc:    Board of Education
        Robert H. Cohen, Esq.

Encl:  BOE Resolution

Page 5, November 9, 2006

A motion was made that upon the recommendation of the Superintendent, the Board of Education approve the appointment of **Melissa Doyle, as a Part-Time School Nurse, 4 hours per day, at Sacred Heart School, at a salary of $27.97 (per hour) effective November 14, 2006.**

Motion:  Mrs. Donnery          Seconded:  Mrs. Lawless          Approved

A motion was made that upon the recommendation of the Superintendent, the Board of Education appoint **Teneika Larkins** to the position of **Modified Cheerleading Coach at a stipend of  $1,458,61**

Motion:  Mrs. Donnery          Seconded:  Mrs. Crill          Approved

**Item #1 Appointment of School Helper on Addendum II was tabled.**

That upon the recommendation of the Superintendent, be it resolved that pursuant to Education Law 913, **the person identified in the attached is hereby directed to submit to a follow-up medical exam with Dr. Medina, the School Physician.**

Motion:  Mrs. Donnery          Seconded:  Mrs. Crill          Approved

There being no further business to come before the Board, the meeting was adjourned at **10:25 P. M.** upon the motion made by Mrs. Donnery seconded by Mrs. Crill and carried with all members present voting in favor thereof.

Respectfully submitted,
Joanne DiBlasi, District Clerk

**The next Board of Education Meeting will be
Thursday, December 7, 2006
Public Meeting at 8:00 P. M.
in the James I. O'Neill High School Library**

**EXHIBIT E**

CARLOS A. MEDINA, M.D., F.A.C.S., P.C.

PHYSICIAN AND SURGEON

127 MAIN STREET
HIGHLAND FALLS, NY 10928
TEL: (845) 446-4040
FAX: (845) 446-7231

80 MAPLE STREET
CORNWALL NY 12518
TEL: (845) 534-3500
FAX: (845) 446-7231

## CONFIDENTIAL

August 10, 2006
Dr. Philip B. Arbolino
Superintendent of Schools
Highland Falls, New York 10928

Re: Medical Examination of Mr. James Pierce

Dear Dr. Arbolino ,

Following your request for medical examination of Mr. James Pierce, a teacher at O'Neill High School, I examined him on June 20, 2006 and June 26, 2006. Lab tests and x-rays were ordered.

My written report and results of the tests are enclosed with this letter.

Sincerely,

Carlos A. Medina, M.D., F.A.C.S.

CARLOS A. MEDINA, M.D., F.A.C.S., P.C.
PHYSICIAN AND SURGEON

127 MAIN STREET
HIGHLAND FALLS, NY 10928
TEL: (845) 446-4040
FAX: (845) 446-7231

80 MAPLE STREET
CORNWALL, NY 12518
TEL: (845) 534-3500
FAX: (845) 446-7231

## CONFIDENTIAL

Name of Patient: James Pierce
Date of Birth: December 1, 1952
Place of Exam: 127 Main St Highland Falls, NY 10928 Medical Office
Witness: Teresa Mayair, fiancée

Date of Exam: June 20, 2006

History: Patient is a 53 year old, white male. He is a teacher of special education
and resides in Wappinger Falls, New York. The Superintendent of Schools, Dr.
Philip Arbolino, refers him for a medical exam.

Family History: Mother had lung cancer; father had cancer of the colon. No history
of diabetes, stroke or myocardial infarction. He is the father of two children, ages
15 and 13, who are in good health.

Social History: smokes 1 pack cigarettes/day, 20-year habit. Denies alcohol intake.
He is engaged. Was a professional boxing coach.

Surgery: Anal fistulectomy 1990; Left knee arthroscopy 1990; Laryngeal
polypectomy 1990: Bilateral hip replacement 2001 and 2003.

System review: positive for Bronchial asthma, chronic hip pain and osteoarthritis
lower extremities.

Medicines: Albuterol, Hydrocodone10 and Saboxone

Physical Exam: Height 5' 8'', Weight 224 lbs, BP 130/72, P 70/m, R 18/m
HEENT: teeth are in poor condition
Neck:    supple, no masses, thyroid not enlarged, no JVD or carotid bruit
Heart:   RSR, no murmur
Lungs:   Clear
Abdomen: globulous, soft, not tender, no masses, no bruit
Genitalia: normal, no hernia
Rectal: negative for masses or guaiac
Prostate: regular, mid size, not tender, no masses
Extremities: mild pretibial edema, ambulation is normal

DIPLOMATE OF THE AMERICAN BOARD OF SURGERY

CARLOS A. MEDINA, M.D., F.A.C.S., P.C.
PHYSICIAN AND SURGEON ·

②

127 MAIN STREET
HIGHLAND FALLS, NY 10928
TEL: (845) 446-4040
FAX: (845) 446-7231

80 MAPLE STREET
CORNWALL, NY 12518
TEL: (845) 534-3500
FAX: (845) 446-7231

Neuro: Grossly intact
Lymphatics: not enlarged

Diagnosis: Osteoarthritis lower extremities, Bronchial Asthma

Plan: Full blood profile, Routine urine, Drug screening, Chest x-ray, EKG
  Stop smoking
  Dental exam
  Return to office in one week

Carlos A. Medina, M.D., F.A.C.S.

June 26, 2006

History: Patient returns to review lab results and EKG and Chest x-ray reports.
Urine drug screen was positive for opiates, patient is on hydrocodone. He also
tested positive for benzodiazapines. Since he did not list this type of drug, I
questioned him about it and he admitted using diazepam(Valium) from his finacee
but without her knowledge. He stated he was stressed and had taken one 10 mg
tablet of Valium every other day for two months. Mr.Pierce's cholesterol and
triglycerides were elevated and he had a mild anemia (HCT 36.5%, HB 12.2%).
His EKG was borderline normal ;there was delayed IV conduction. Chest x-ray
was normal.

Diagnosis: 1) User of opiates and benzodiazepines
   2) Hyperlipidemia
   3) Cardiac IV Conduction Delay
   4) Anemia
   5) Chronic Bilateral Hip Pain
   6) Bronchial Asthma
   7)Osteoarthritis lower extremities

CARLOS A. MEDINA, M.D., F.A.C.S., P.C.
PHYSICIAN AND SURGEON

③

127 MAIN STREET
HIGHLAND FALLS, NY 10928
TEL: (845) 446-4040
FAX: (845) 446-7231

80 MAPLE STREET
CORNWALL, NY 12518
TEL: (845) 534-3500
FAX: (845) 446-7231

## Plan and Recommendations

1) Mr.Pierce needs to be examined by an orthopedist to establish the status of the hip surgeries. Three years after bilateral hip replacement and with normal range of motion and ambulation one would expect minimal or no pain at all.

2a) Chronic use of opiate-hydrocodone has made this patient dependent on strong pain medication. If his orthopedic evaluation is normal, Mr. Pierce should be detoxified at a competent medical facility by a specialist in pain management and a psychiatrist to offer support therapy. If the orthopedic evaluation demonstrates that there is a cause for the severe pain then surgical correction and physical therapy should be inititiated.

2b)Patient must abstain from self-medicating with Valium.  He must consult a psychiatrist for proper treatment of anxiety.

3)The rest of the medical findings and conditions have to be addressed by Mr.Pierce's regular doctor.

I offered the patient the opportunity for his doctors to call me about his conditions. So far, they have not done so. I discussed in detail these medical findings and my recommendations with Mr.Pierce and his fiancée. They are aware that I will  send a written report to the Board of Education.

Carlos A. Medina, M.D ., F.A.C.S.

Quest Diagnostics Incorporated

PATIENT INFORMATION
**PIERCE,JAMES G**

| | |
|---|---|
| REPORT STATUS | **Final** |

COPY
6/21/06

QUEST DIAGNOSTICS INCORPORATED
CLIENT SERVICE 800.631.1390

DOB: 12/01/1952   Age: 53
GENDER: M
SS: 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

PHONE: 8454166145

ORDERING PHYSICIAN
**MEDINA,CARLOS A**

CLIENT INFORMATION
97288
CARLOS A. MEDINA, MD
127 MAIN ST.
HIGHLAND FALLS, NY 10928-4019

SPECIMEN INFORMATION
SPECIMEN:    82931548
REQUISITION: T972880012597
LAB REF NO:

COLLECTED:   06/20/2006    11:58
RECEIVED:    06/21/2006    05:27
REPORTED:    06/21/2006    13:01

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| COMP METABOLIC PANEL | | | | TBR |
| GLUCOSE | 88 | | 65-139 mg/dL | |
| | The glucose reference range is based on a non-fasting state. | | | |
| SODIUM | 136 | | 135-146 mmol/L | |
| POTASSIUM | 4.3 | | 3.5-5.3 mmol/L | |
| CHLORIDE | 102 | | 98-110 mmol/L | |
| CARBON DIOXIDE | 26 | | 21-33 mmol/L | |
| UREA NITROGEN | 15 | | 7-25 mg/dL | |
| CREATININE | 0.9 | | 0.5-1.4 mg/dL | |
| BUN/CREATININE RATIO | 16.7 | | 6.0-25.0 | |
| CALCIUM | 9.1 | | 8.5-10.4 mg/dL | |
| PROTEIN,TOTAL | 7.2 | | 6.0-8.3 g/dL | |
| ALBUMIN | 4.3 | | 3.5-4.9 g/dL | |
| GLOBULIN,CALCULATED | 2.9 | | 2.2-4.2 g/dL | |
| A/G RATIO | 1.5 | | 0.8-2.0 | |
| BILIRUBIN,TOTAL | 0.30 | | 0.20-1.50 mg/dL | |
| ALKALINE PHOSPHATASE | 63 | | 20-125 U/L | |
| AST | 22 | | 3-50 U/L | |
| ALT | 13 | | 3-60 U/L | |
| LIPID PANEL | | | | TBR |
| CHOLESTEROL,TOTAL | | | | |
| HDL CHOLESTEROL | | | | |
| CHOLESTEROL/HDL RATIO | | | | |
| LDL-CHOL,CALCULATED | | | 130 mg/dL | |
| TRIGLYCERIDES | | | | |
| THYROID BASIC PROFILE | | | | |
| TSH | 2.52 | | 0.40-5.50 mIU/L | TBR |
| T4,FREE | 0.9 | | 0.8-1.8 ng/dL | TBR |
| CBC W/ DIFF & PLT | | | | TBR |
| WBC | 7.9 | | 3.8-10.8 Thous/mcL | |
| RBC | | | | |
| HEMOGLOBIN | | | | |
| HEMATOCRIT | | | | |
| MCV | 94.7 | | 80.0-100.0 fL | |
| MCH | 31.5 | | 27.0-33.0 pg | |
| MCHC | 33.3 | | 32.0-36.0 g/dL | |
| RDW | | | | |
| PLATELET COUNT | 331 | | 140-400 Thous/mcL | |
| MPV | | | | |
| TOTAL NEUTROPHILS,% | 57.1 | | 38-80 % | |

Quest Diagnostics Incorporated

PATIENT INFORMATION
**PIERCE,JAMES G**

REPORT STATUS **Final**   6/20/06

QUEST DIAGNOSTICS INCORPORATED

ORDERING PHYSICIAN
**MEDINA,CARLOS A**

DOB: 12/01/1952  Age: 53
GENDER: M

REPORTED:   06/21/2006   13:01

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| CBC W/ DIFF & PLT (Continued) | | | | |
| TOTAL LYMPHOCYTES,% | 30.2 | | 15-49 % | |
| MONOCYTES,% | 9.3 | | 0-13 % | |
| EOSINOPHILS,% | 2.9 | | 0-8 % | |
| BASOPHILS,% | 0.5 | | 0-2 % | |
| NEUTROPHILS,ABSOLUTE | 4511 | | 1500-7800 Cells/mcL | |
| LYMPHOCYTES,ABSOLUTE | 2386 | | 850-3900 Cells/mcL | |
| MONOCYTES,ABSOLUTE | 735 | | 200-950 Cells/mcL | |
| EOSINOPHILS,ABSOLUTE | 229 | | 15-550 Cells/mcL | |
| BASOPHILS,ABSOLUTE | 40 | | 0-200 Cells/mcL | |
| DIFFERENTIAL | An instrument differential was performed. | | | |
| PSA,TOTAL | 0.48 | | 0.0-4.0 ng/mL | TBR |

The reagent manufacturer of this Chemiluminescent
Immunoassay is Bayer Diagnostics. Please note that PSA
values obtained with different methods or reagents cannot
be used interchangeably. Assay results, regardless of value,
should not be interpreted as absolute evidence of the
presence or absence of disease.

| C-REACTIVE PROTEIN | 0.3 | | <0.8 mg/dL | TBR |

--------------------------------------------------------------------------------

**Performing Laboratory Information:**

TBR  Quest Diagnostics One Malcolm Avenue Teterboro NJ  07608 Laboratory Director: William E. Tarr, M.D.

Quest Diagnostics Incorporated

*6/20/06*
*CAM*

QUEST DIAGNOSTICS INCORPORATED
CLIENT SERVICE 800.631.1390

PATIENT INFORMATION
**PIERCE,JAMES G**

REPORT STATUS  **Final**

DOB: 12/01/1952  Age: 53
GENDER: M
SS: 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

ORDERING PHYSICIAN
**MEDINA,CARLOS A**

SPECIMEN INFORMATION
SPECIMEN:     82817770
REQUISITION: T972880012599
LAB REF NO:

PHONE: 8454166145

CLIENT INFORMATION
97288
CARLOS A. MEDINA, MD
127 MAIN ST.
HIGHLAND FALLS, NY 10928-4019

COLLECTED:   06/20/2006    12:01
RECEIVED:    06/21/2006    01:58
REPORTED:    06/21/2006    10:10

---

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| ALCOHOL, ETHYL,W/CONF,BLD | | | | TBR |

        This result is for medical treatment only.
Analysis was performed as non-forensic testing.

BLOOD ALCOHOL RESULT: NEGATIVE.
REFERENCE RANGE: NEGATIVE.
        This result is for medical treatment only.
Analysis was performed as non-forensic testing.

-----------------------------------------------------------------------

Performing Laboratory Information:

TBR   Quest Diagnostics One Malcolm Avenue Teterboro NJ  07608 Laboratory Director: William E. Tarr, M.D.

Quest Diagnostics Incorporated

*CAN*

| | |
|---|---|
| PATIENT INFORMATION<br>**PIERCE,JAMES G** | REPORT STATUS  **Final**  6/21/06 |

QUEST DIAGNOSTICS INCORPORATED
CLIENT SERVICE 800.631.1390

DOB: 12/01/1952  Age: 53
GENDER: M
SS: 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

ORDERING PHYSICIAN
**MEDINA,CARLOS A**

SPECIMEN INFORMATION
SPECIMEN:     82939940
REQUISITION: T972880012601
LAB REF NO:

PHONE: 8454166145

CLIENT INFORMATION
97288
CARLOS A. MEDINA, MD
127 MAIN ST.
HIGHLAND FALLS, NY 10928-4019

COLLECTED:  06/20/2006    12:04
RECEIVED:   06/21/2006    05:58
REPORTED:   06/21/2006    12:38

---

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| DRUG SCR 10 DRUG,W/O CONF | | | | TBR |
| | | | | Screen<br>Cut Off Level<br>(ng/mL) |
| AMPHETAMINES,QL,URINE | Negative | | Negative 1000 | |
| BARBITURATES,QL,URINE | Negative | | Negative 300 | |
| BENZODIAZEPINES,QL,URINE | | POSITIVE | Negative 300 | |
| | | Presumptive positive result; not confirmed. | | |
| COCAINE,QL,URINE | Negative | | Negative 300 | |
| METHADONE,QL,URINE | Negative | | Negative 300 | |
| METHAQUALONE,QL,URINE | Negative | | Negative 300 | |
| OPIATES,QL,URINE | | POSITIVE | Negative 300 | |
| | | Presumptive positive result; not confirmed. | | |
| PHENCYCLIDINE,QL,URINE | Negative | | Negative 25 | |
| PROPOXYPHENE,QL,URINE | Negative | | Negative 300 | |
| THC 50 URINE | Negative | | Negative 50 | |

These results are for medical treatment only.
Analysis was performed as non-forensic testing.
Screen for all drugs performed by Enzyme Immunoassay.

-----------------------------------------------------------------------

**Performing Laboratory Information:**

TBR  Quest Diagnostics One Malcolm Avenue Teterboro NJ  07608 Laboratory Director: William E. Tarr, M.D.

PIERCE,JAMES G - 82939940



| 1 Column Street, 1st Floor | 400 Westage Business Center Dr. | 23 Fish and Game Rd |
|---|---|---|
| Poughkeepsie, NY 12601 | Fishkill, NY 12524 | Hudson, NY 12534 |

**845-454-4700**
**888-XRAY-888**
(888-972-9888)
FAX 845-454-6808

MEDINA MD, CARLOS A
127 MAIN STREET

HIGHLAND FALLS, NY, 10928

**Patient:** PIERCE, JAMES G
**MRN:** 610190
**DOB:** 12/01/1952
**Patient Phone:** (845) 416-6145

| **Procedure:** | **Accession No:** | **Ordering Physician:** | **Exam Date:** |
|---|---|---|---|
| XR Chest 2 VW | XR-06-0015064 | MEDINA MD, CARLOS A | 06/20/2006 01:31:06 PM |

**Clinical History:**
asthma

**Interpreted Report**
PA and lateral views of the chest demonstrate clear lungs. The cardiac and mediastinal contours are normal. There is no pleural effusion or pneumothorax. The visualized bony framework is normal.

CONCLUSION:
Normal chest radiographs.

TR: 06/20/2006
BG

Dictated by:   BRUCE GENDRON MD, DABR

Electronically Signed by:   BRUCE GENDRON MD, DABR
Electronically Signed on:   06/20/2006

INSTRUCTIONS: TO MOUNT SLIPS, PULL OFF ADHESIVE
BACKING INDICATED BY ARROWS. PRESS FIRMLY TO
EXPOSED ADHESIVE. ATTACH SUCCEEDING SLIPS ON LINES
BELOW AS INDICATED. BE SURE REPORTS ARE EVENLY
ALIGNED TO INSURE NEATNESS.

CLIENT

MATTER

RESPONSIBLE PERSON

Check Approriate Blocks Indicating Time Slips Billed

6/20/06

NORMAL SINUS RHYTHM
RSR' OR QR PATTERN IN V1 SUGGESTS RIGHT VENTRICULAR CONDUCTION DELAY
BORDERLINE ECG

PIERCE, JAMES
58y   Med: Unknown
Sex: M   Race: Cauc   220lb   58in
Loc:   Room

Vent. Rate   53 BPM
PR interval   132 ms
QRS duration   120 ms
QT/QTc   400/406 ms
P-R-T axes   61   -24   -1

25mm/s
10mm/mV
100Hz
Pgm 05C   104   Unconfirmed
Referred by: DR MEDINA

ID:

**EXHIBIT F**

# JAMES I. O'NEILL HIGH SCHOOL
# MEMORANDUM

TO:        JAMES PIERCE

FROM:      LOUIS A. TROMBETTA

DATE:      JULY 27, 2006

RE:        2006-2007  TEACHER ASSIGNMENT

For the 2006-2007 school year your teaching assignment will be teacher in charge of the In-School Suspension room. This assignment will be for five periods during the school day as outlined by the Highland Falls teacher contract.  You will be assigned an additional duty period which will be determined after the master schedule is completed.

In the case, that the In-School Suspension is not utilized during the school day, you are to report to the alternative education room for additional support for that program.

If you have any questions for the assignment for 2006-2007 school year, please contact me.

Copy:  Dr. Arbolino

**EXHIBIT G**



# HIGHLAND FALLS – FORT MONTGOMERY
## CENTRAL SCHOOL DISTRICT
### Post Office Box 287, Highland Falls, New York 10928

### *A Place Where Talents Are Developed*
Superintendent of Schools: Philip B. Arbolino, Ed.D.

TO:        Mr. James Pierce

FROM:    Dr. Philip Arbolino, Superintendent

RE:        Our Meeting of 09/01/06

DATE:      09/05/06

As per our meeting of 09/01/06, you are to meet with Mr. Trombetta prior to 09/08/06 to develop and immediately implement a Professional Improvement Plan that you must follow for the 2006-2007 School Year. This plan must specifically include classroom management strategies, behavioral expectations and academic goals and objectives, particularly involving your work with Alternative Education students. This plan must be submitted to me no later than 09/12/06 for my review and approval.

Each morning, you must report to Mr. Trombetta's office to determine your schedule for the day no later than 7:15AM. You are to follow your schedule previously given to you on 09/01/06 for In-School-Suspension, as well as for your non-instructional duties, provided that there are students available. If not, you are assigned the following schedule:

> ➤ Periods 1-4: Alternative Students Classroom-Room 335B
> ➤ Period 5-Prep
> ➤ Periods 6/7&7/8-Hall Duty by the Cafeteria
> ➤ Period 11-Alternative Students Classroom-Room 335B or work with specific students in a class.

Furthermore, I am recommending that you enter the Employees Assistance Program (EAP) as a supportive resource to you during this school year. Please let me know no later than 09/20/06, in writing, if you choose this option. If I do not hear from you, I will assume that you chose not to exercise this option.

Your cooperation and professional follow-up with the above schedules is expected. Please let me know if you have any questions or need any further clarification.

cc:  Mr. Trombetta
     Mr. Johndrow
     Mr. Mallon
     File

Superintendent's Office   (845) 446-9575   FAX (845) 446-3321   E-Mail: jdiblasi@hffmcsd.org
Business Office (845) 446-4738   FAX (845) 446-7108

# JAMES I. O'NEILL HIGH SCHOOL
## MEMORANDUM

TO:        DR. PHILIP ARBOLINO

FROM:      LOUIS TROMBETTA

DATE:      SEPTEMBER 8, 2006

RE:        MR. PIERCE'S PERSONAL IMPROVEMENT PLAN


Please find attached the Improvement Plan and follow up memos as outlined in your memo dated September 1, 2006.

# Personal Improvement Plan

**GOAL/OBJECTIVE: TO IMPROVE MR. PIERCE'S EFFECTIVENESS IN THE I.S.S ROOM**

| OBJECTIVE | STRATEGIES | TIMELINE DATE | RESPONSIBILITY |
|---|---|---|---|
| 1. Improve the learning environment of the I.S.S. room. | A. Individual desks are needed; B. Computer/printer needs to be connected; C. Room should be attractively appointed; D. School supplies should be in plentiful supply. | September/June 2006-2007 | Mr. Pierce; Custodial Staff Computer people |
| 2. Improve communication between the classroom teacher and the I.S.S. room. | A. Work with General Office Staff to get work quickly from class to I.S.S; B. Create form for teachers to facilitate communication of all assignments; C. Letter to teachers asking for copy of current textbook. | September/June 2006-2007 | Mr. Pierce; General Office Staff Individual teachers; Students themselves |
| 3. Work toward developing strategies to remediate the behavior of students habitually in I.S.S. | A. Arrange to have Social Worker speak to students in I.S.S. regularly; B. Identify chronic I.S.S. students and work on remediation plan; C. Create a plan for the next level of administrative discipline. | September/June 2006-2007 | Mr. Pierce; Social Worker Mr. Trombetta |

To: Mr. Trombetta
From: James G. Pierce
Re: Meeting "P.I.P." Goals for I.S.S.
       Room.
Date: 9/7/06

Mr. Trombetta,
     In an effort to meet the
goals and objectives set out in the
"P.I.P." of September 6, 2006, I require
your advice and input on several
important matters.
     I need the help of the custodial
staff to move a large file cabinet
and my old computer from room 335
(the old "Alt. Ed." room) to the I.S.S.
room. Their assistance would also be
invaluable in securing for my room
6 to 8 desks. Currently, while there
are sufficient chairs in the room to
meet our needs, there are only two
long tables. For the I.S.S. students
to most successfully complete their
assignments, desks are a necessity. Having
them sit together at tables is an
open invitation to distraction and will
hinder them from staying on task.

In addition, I feel it is very important to make the I.S.S. room Computer capable as quickly as possible. If serious measures are being undertaken to make this room a place for academic success, the process will begin shortly to bring the room into the 21st Century. As I have mentioned in the I.S.S. Mission Statement, there are currently no facilities in this space to do research or word process.

If there is any procedure for contacting the custodians and the computer staff of which I am unaware, please let me know. I am making you aware of these re-quests in the hope that you will rapidly be able to negotiate your way "through the red tape" more quickly than I.

Attached to this memo, is a note to the pedagogical staff of the building requesting that they drop off a copy of their textbook to the I.S.S. room or the General Office. I await your approval before distributing this letter.

In the meantime, I am staying extremely busy. I am bringing supplies and materials downstairs from my old third floor classroom, appointing the I.S.S. room in an appropriate fashion, putting away and sorting through materials, and looking forward to meeting other goals listed on the above referenced "P.I.P."

Sincerely,

James N. Querie

cc: Mr. Mallon

To: All Subject Teachers
From: James G. Pierce
Re: Books for the I.S.S. Room
Date: September 7, 2006

In an effort to stock the I.S.S. Room with a copy of the textbook from each subject area, at your earliest convenience please drop off a copy of the book currently in use in your class either to Mr. Trombetta in the General Office or directly to me in the I.S.S. Room.

It would be helpful if the subject/course title were indicated in some manner.

Thanks in advance for your help and cooperation in this matter.

James N. Pierce

cc: Mr. ~~Trombetta~~
Mallon

# JAMES I. O'NEILL HIGH SCHOOL
# MEMORANDUM

TO:              DR. PHILIP ARBOLINO

FROM:        MR. LOUIS  TROMBETTA

DATE:         SEPTEMBER 21, 2006

RE:              MR. PIERCE'S ALTERNATIVE EDUCATION
                     ASSESSMENT PLAN

Attached are the goals and objectives for Mr. Pierce when he is assigned to Alternative Education.

# JAMES G. PIERCE – ISS

| OBJECTIVE | STRATEGIES | RESPONSIBILITY | TIMELINE DATE |
|-----------|-----------|----------------|---------------|
| 1. To improve the chances of Alternative Education students to pass state examinations in Social Studies. | Within the I.S.S. Room students will:<br>A. Learn test-talking strategies;<br>B. Review key material;<br>C. Go over old examination questions. | Alternative Education Staff; Mr. Pierce; Students | September/June 2006-2007 |
| 2. Assist Alternative Education students in passing their Social Studies classes. | Within the I.S.S. Room students will:<br>A. Receive help with homework, classroom assignments, and organizational skills;<br>B. Reinforce previous lessons. | Alternative Education Staff; Mr. Pierce; Students | September/June 2006-2007 |

To: Mr. Trombetta
From: James G. Pierce
Re: Student Remediation in I.S.S.
Date: 9/8/06

This morning I met at some length with Mr. Charles "Chuck" Giordina, the school social worker. The prime topic was to begin formulating a plan designed to remediate the inappropriate behavior of those students who will be chronic and habitual residents of the I.S.S. room. Dealing with this potential population will require a multi-faceted approach involving not only the I.S.S. teacher and the school social worker, but the administration and the classroom teachers as well.

The key to any behavioral modification plan is clearly documentation. The documentation should take place on many levels: the classroom teacher documents the nature of the behavioral issue; the administrator documents the seriousness of the inappropriate

behavior; the I.S.S. teacher documents the frequency of each students' appearances as well as the positive or negative levels of performance (behaviorally and academically) in the I.S.S. room. When and only when all this documentation takes place, can it be put together in order to ascertain a pattern of anti-social in-school behavior that may require another level of remediation.

Accurate and consistent documentation is the most reliable indicator we can use to assist us in identifying the most needy, most disruptive, most challenging, and most in need of intervention.

Once the Habitual Offenders ("H.O.s") have been identified, they will fall into two distinct categories in the I.S.S. room: the H.O.s who behave well and complete their academic assignments, and the H.O.s who refuse to work or follow the I.S.S. rules. There needs to be in place, a different strategy for dealing with each group.

For both groups, the necessary and proper first step is a referral to the Instructional Support Team ("I.S.T."). The former group may respond positively to a more closely monitored regular class situation. Behavioral contracts, closer parental contact, or simply the overt threat of academic failure may be enough to get this group of H.O.s out of chronic I.S.S. attendance and back into the regular classroom.

The latter group may require another, more severe level of intervention by the I.S.T. The Team may decide that a particular student has major behavioral issues that require an intensely supportive plan. Other options available to the I.S.T. include (but are not limited to) outside placement, out of school suspension ("O.S.S."), or referral to the C.S.E.

For all students, however, the ideal is to find an effective, individualized way to get them back in their classrooms. This is the main

goal for all who enter the I.S.S. room: from the student who is a "first-timer" to both types of H.O.s.

I will continue meeting with Mr. Giardina on a regular basis, and forge a strong alliance designed to document, identify, assist, and remediate the academic and social issues that face each and every student who finds himself or herself in the "dungeon" (as the I.S.S. room is already being referred to in the vernacular of the students).

cc: Mr. Giardina
    Mr. Mallon



# HIGHLAND FALLS – FORT MONTGOMERY
## CENTRAL SCHOOL DISTRICT
Post Office Box 287, Highland Falls, New York 10928

### *A Place Where Talents Are Developed*
Superintendent of Schools: Philip B. Arbolino, Ed.D.

TO:      Louis Trombetta

FROM:    Dr. Philip Arbolino

RE:      Mr. James Pierce

DATE:    09/01/06

As we have discussed, the Board of Education has directed us to carefully monitor and keep a close watch on the behavior and actions of Mr. James Pierce, particularly as he interacts with students, staff, administrators and parents. As per our meeting with him today, 09/01/06, I am recommending that you develop and immediately implement a Professional Improvement Plan for him, specifically including classroom management strategies, behavioral expectations and academic expectations in his work with Alternative Education students. Please submit this plan to me no later than 09/08/06, for my review and approval.

In addition, please keep a weekly notebook on your interactions with him, as well as on your observations regarding his behavior, initiating on 09/05/06. This notebook should be presented to me through a scheduled meeting in my office during a 10 day period of time to enable me to present these findings to the Board of Education at each of its regularly scheduled meetings.

Thank you for your help and cooperation in this matter.

cc: Mr. Johndrow

# EXHIBIT H

To: Mr. Trombetta
From: James G. Pierce
Re: Grievance #1
Date: October 19, 2006

    I am submitting a grievance regarding my position as "In School Suspension Teacher."

    That I hold this position is in direct violation of the Contractual Agreement between the Board of Education and the Town of Highlands Teachers' Association.

    The position I was assigned is in direct violation of Article 6, clauses A, B, and C in said contract.

    I look forward to a rapid resolution to this matter.

    Thank you in advance for your kind attention to this situation.

              James G. Pierce
              10/19/06

cc: Michael Mallon - THTA Representative

To: Mr. Trombetta
From: James G. Pierce
Re: Grievance #2
Date: October 19, 2006

    I am submitting a grievance regarding my right to review matter placed in my personnel file.

    That I have not been allowed an opportunity to review material that may be derogatory to my conduct, service, character, or personality is in direct violation of the Contractual Agreement between the Board of Education and the Town of Highlands Teachers Association. This is in direct violation of Article 7, clauses L and M in said contract.

    I look forward to a rapid resolution to this matter.

    Thank you in advance for your kind attention to this situation.

               James G. Pierce

CC: Michael Mallon - THTA Representative

# HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL DISTRICT

## TOWN OF HIGHLANDS

## HIGHLAND FALLS, NEW YORK 10928

# CONTRACTUAL AGREEMENT

## BETWEEN THE

## BOARD OF EDUCATION

## AND

## TOWN OF HIGHLANDS TEACHERS' ASSOCIATION

### July 1, 2004 - June 30, 2008

# **TABLE OF CONTENTS**

| **ARTICLE** | | **PAGE** |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Negotiation Procedures | 1 |
| 3 | Grievance Procedure | 2 |
| 4 | Teacher - Administration | 3 |
| 5 | Vacancies | 3 |
| 6 | Involuntary Transfers and Reassignments | 3 |
| 7 | Teacher Evaluations | 4 |
| 8 | Use of School Facilities | 6 |
| 9 | Sick Leave and Personal Leave | 7 |
| 10 | Retirement Incentive | 7 |
| 11 | Temporary Leave of Absence | 8 |
| 12 | Extended Leaves of Absence | 9 |
| 13 | Salary | 11 |
| 14 | Dues Deduction | 13 |
| 15 | Payroll Savings Bond Plan & Credit | 13 |
| 16 | Health and Insurance Benefits | 14 |
| 17 | Quality Educational Development | 16 |
| 18 | Textbooks and Supplies | 16 |
| 19 | Inter-School Teaching | 17 |
| 20 | Teacher and Association Rights | 17 |
| 21 | No Strike Pledge | 17 |
| 22 | Class Size and Teaching Load | 17 |
| 23 | Length of Teacher School Day & School Year | 18 |
| 24 | General Provisions | 19 |
| 25 | Duration | 19 |

APPENDED WILL BE THE FOUR-YEAR AGREEMENT FOR THE SCHEDULES LISTED BELOW:

SALARY SCHEDULES
COMPENSATION FOR EXTRA DUTIES

2007 MAY 18   A   8 4 7

BY AND BETWEEN THE INTERIM SUPERINTENDENT OF SCHOOLS AND BOARD OF EDUCATION OF THE HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL DISTRICT, herein after "the District" and THE TOWN OF HIGHLANDS TEACHERS ASSOCIATION, hereinafter "the Union";

WHEREBY, the District and the Union agree to revive and incorporate the provisions of the July 1, 2000-June 30, 2004 Collectively Negotiated Agreement between them into a new four (4) year Agreement effective July 1, 2004 and terminating on June 30, 2008, except as modified by the following provisions.

AGREEMENT made the 28th day of April, 2005 by and between the BOARD OF EDUCATION OF THE HIGHLAND FALLS-FORT MONTGOMERY CENTRAL SCHOOL DISTRICT, Town of Highlands, Orange County, New York, a municipal corporation having its central office at the James I. O'Neill High School, 21 Morgan Road, Fort Montgomery, New York, and the TOWN OF HIGHLANDS TEACHERS' ASSOCIATION, comprising of an association of teachers of the said District having an address at the James I. O'Neill High School, 21 Morgan Road, Fort Montgomery, New York.

W I T N E S S E T H :

IN CONSIDERATION OF THE MUTUAL COVENANTS HEREINAFTER EXCHANGED, THE PARTIES MUTUALLY AGREE AS FOLLOWS:

## ARTICLE 1:          RECOGNITION

The School Board recognizes the Association for purposes of collective negotiations, pursuant to the Public Employees' Fair Employment Act, as the exclusive representative of the negotiating unit consisting of all members of the teaching staff and other certified employees of the School District during the regular school year, on tenure or probationary appointment, except the Superintendent of Schools, Assistant Superintendent of Schools, Principals, Assistant Principals, and except employees whose remuneration is based on less than half of the annual salary rate for their positions. Unless otherwise indicated, employees in this unit will be hereinafter referred to as "TEACHERS". Included also are Nurses under Articles 3, 4, 5, 7, 9, 11, 12, 14 (separate schedule), 15, 16, 17, 20, 24.

## ARTICLE 2:          NEGOTIATIONS PROCEDURES

The parties shall discuss only those terms and conditions which are applicable under the Taylor Law. The first negotiating meeting shall be conducted between March 1st and March 31st of the year of expiration.

1

**ARTICLE 3:**                **GRIEVANCE PROCEDURE**

A.          Declaration of Policy.  In order to establish a more harmonious and cooperative relationship, it is hereby declared to be the purpose of this procedure to provide a means for orderly settlement of differences as they arise, pursuant to the contract which has been mutually agreed to in the District.

B.          In the event that a teacher has a grievance, he or she may present the same informally to the Building Principal for resolution.  In the event that a satisfactory resolution is not accomplished within five (5) days, the teacher shall then have the right of submitting the grievance to the Principal, in writing.  In the event that a satisfactory resolution is not accomplished within (10) ten school days the teacher shall have the right to submit the grievance to the Superintendent of Schools in writing.  In the event that a satisfactory resolution is not accomplished within twenty (20) school days of receipt of the written grievance, the teacher shall have the right of submitting the grievance in writing to the Board of Education and at the same time, after being furnished with a copy thereof, the Superintendent of Schools shall also submit in writing, his or her findings and conclusions or suggestions.  In the event that the grievance is not resolved at the Board level within twenty (20) school days from the date of the first Board meeting following the receipt of the grievance, the matter shall be submitted for advisory arbitration to the American Arbitration Association to be conducted under their rules and regulations.

C.          Both teachers and Board respectively shall have the right to representation at all grievance procedures.

D.          All grievances will be initiated and processed by the THTA.  A grievance may be presented at the lowest level of administration that would have the power to act on the particular grievance.

2

E.      Each side shall bear the cost thereof according to the rules of the American
Arbitration Association.

## ARTICLE 4:      TEACHER ADMINISTRATION

A.      The Association may select representatives who shall meet with the
administration of each school at a time other than while school is in session
whenever necessary during the school year to review and discuss local problems
and practices.   Any such meeting may be canceled or adjourned by mutual
consent.  It is intended that school sessions not be interfered with.

B.      The Association may select representatives who shall meet with the
Superintendent of Schools at a time other than when school is in session whenever
necessary during the school year to review and discuss local problems and
practices.   Any such meeting may be adjourned or canceled by mutual consent.
Such meeting may not conflict with school sessions.

C.      Administrative Regulations shall be discussed with the Administration in each
school.  Disagreements shall be referred to the Superintendent of Schools whose
determination shall be final.

## ARTICLE 5:      VACANCIES

A.      Vacancies will be posted as they become available.

## ARTICLE 6:      INVOLUNTARY TRANSFERS AND REASSIGNMENTS

A.      Notice of an involuntary transfer or reassignment shall be given to teachers prior to
June 1, except in case of a genuine educational emergency.

B.      An involuntary transfer or reassignment shall be made only after a meeting between the teacher involved and the Principal in charge, at which time the teacher will be notified of the reasons therefore, which shall be based on sound educational policy.

C.      Whenever involuntary transfers must be made, the teacher's major and/or minor field of study, quality of teaching performance and length of service in the Highland Falls-Fort Montgomery Central School System shall be the criteria, together with instructional requirements and staff availability, in determining the transfer. Should the Board contemplate eliminating any regular or special teaching position, notice will be given to the teacher involved at the earliest possible date, but in no event later than thirty (30) days in advance of the last scheduled day for classes in any particular year, except in the case of a failed budget vote.

D.      Should the Board contemplate eliminating any regular or special teaching positions, it will provide the teacher at least 30 days notice prior to the Board's eliminating the position.

## ARTICLE 7:      TEACHER EVALUATION

A.      Monitoring or observation of work performances of a teacher will be conducted openly by Principals with full knowledge of the teacher.  The use of public address or audio systems and similar surveillance devices shall not be used for this purpose.

B.      Observations and evaluations of teachers shall be for the purpose of assistance and professional improvement, as well as evaluation or measurement purposes. (Such observations and evaluations shall be spaced at reasonable intervals.)

C.      An evaluation is a written summary based upon at least two (2) written observations.

D.      A copy of each observation shall be presented to the teacher involved before such time that a conference is held concerning said observation. The conference shall take place within ten (10) school days after the teacher is observed.

E.      The teacher will affix his signature to written observations and evaluations to indicate he has had an opportunity to review the material. The teacher will also have the opportunity to make a written comment.

F.      The teacher observation and evaluation procedure and forms will be subject to review and comment, on an annual basis, by the Town of Highlands Teachers' Association.

G.      All observations and evaluations shall be written personally by an administrator but may be typed by clerical staff and kept confidential.

H.      Tenured teachers shall be evaluated at least once a year.

I.      All probationary teachers shall be evaluated a minimum of three (3) times a year.

J.      Any teacher seeking advice and guidance relative to problems arising out of conduct of classroom shall be given advice consistent with the principal's duties, as and when available. This, however, shall not relieve the teacher of his/her primary obligations.

K.      A review of plan books shall be at the discretion of the building supervisor.

L.      Teachers will have the right, upon request, to review the content matter placed in their personal files subsequent to July 1, 1968. A teacher will be entitled to have a representative of the Association accompany him during such review. Letters or other materials received by the Board prior to hiring shall not be available and shall be sealed.

M.    No material derogatory to a teacher's conduct, service, character, or personality will be placed in his personnel file unless the teacher has had an opportunity to review such material.    The teacher will acknowledge that he has had the opportunity to review the material by affixing his signature to the copy to be filed with the express understanding that such signature in no way indicates agreement with the contents thereof.  The teacher will also have the right to submit a written answer to such material and his answer and reply shall be reviewed by the Superintendent of Schools and attached to the filed copy.  If the teacher shall refuse to sign as required above, the Superintendent of Schools shall indicate such refusal and at the same time, state the time and date of such refusal.

## ARTICLE 8:    USE OF SCHOOL FACILITIES

A.    The Association will have the right to use the school buildings without cost and at reasonable times for meetings and all scholarship fund raising activities (not to exceed ten (10) occasions per school year).  The Principal of the building in question shall approve in advance the time and place of such meetings.

B.    There will be (1) Bulletin Board in each faculty lounge for the exclusive use of the Association and teachers.  The Association may use the staff mail boxes for communication with unit members.

C.    The building representative shall be provided the (10) minutes at all faculty meetings, if requested, to report on matters involving representation of the teacher by the Association.

D.    There shall be a permanently assigned faculty room in each building.  In the event that a change is required, this change will be discussed with teachers' representatives.  Any new room must be comparable to the previous room.

E.      An outside telephone line located in a convenient private location will be provided for the use of the THTA in a non-class location and paid for by the THTA.

## ARTICLE 9      SICK LEAVE AND PERSONAL LEAVE

A.      Teachers shall be entitled to thirteen (13) days of sick leave without loss of pay for each school year during which they are employed by the school district. Such leave is available commencing the first day of the school year. Sick leave may be accumulated up to a maximum of 300 days.

    1.      Teachers shall be permitted to utilize five (5) days of the sick leave each year in the event of illness in the family.

    2.      In addition to personal illness or injury, three (3) days of leave not deductible from sick leave may be utilized for personal reasons each year. No reason for the leave need be offered. One day prior notice must be given except in case of emergency. The unused personal leave days will be added as sick leave at the end of the year.

    3.      Personal leave may not be taken to extend a vacation or school holiday.

    4.      The District may require a doctor's note for absences in excess of four (4) consecutive days or when sick leave is used before or after any school recess.

    5.      The District and THTA agree to the creation of a sick bank. See attachment to contract.

B.      Each teacher will be given a statement of his accumulated sick leave at the end of the school year.

## ARTICLE 10      RETIREMENT INCENTIVE

A.      Unit members shall be entitled to a retirement incentive payment of $15,000.00 if they resign for the purpose of retirement on June 30th of their first year of eligibility to receive payment from the New York State Teachers Retirement System without penalty based upon age and having served in this School District for at least twenty (20) years. Notice of resignation for the purpose of retirement

7

must be given in writing to the Board on or before April 1st of the calendar year of retirement, whereupon the benefits will be paid between June 30th and December 31st of the calendar year.

B.      Eligibility for this benefit shall be extended to those who are over the age of 55 who otherwise meet the qualifications requirements set forth in paragraph "A", above.

C.      Any teacher having been in the employ of the school district for ten (10) or more years, who submits to the Superintendent of Schools, a written statement of intention to retire by April 1st in the year of the proposed retirement, shall be entitled to a special allowance.

     1.    Such allowance shall become a part of the final year's salary and shall be paid in equal monthly installments over the last year of employment.

     2.    The special allowance shall be computed at the rate of one (1) day's pay for every four (4) days of unused accumulated sick leave to the teacher's credit at the time of the announced, contemplated retirement.

     3.    The daily rate of pay to the teachers who retire under the aforesaid provision shall be that earned in the year of retirement.

**ARTICLE 11:**         **TEMPORARY LEAVE OF ABSENCE**

Teachers shall be entitled to the following absences with full pay each school year in addition to the leave specified in ARTICLE 9:

A.      Not exceeding one (1) day for the purpose of visiting other schools or attending meetings or conferences of an educational nature upon the written approval of the Superintendent of Schools, obtained in advance of such event.

B.      Up to three (3) days for Association voting delegate to attend the Annual

8

Delegates Assembly of the organization with which the teachers' bargaining agent is affiliated. Notice for this meeting shall be given as far in advance as possible.

C.      Time necessary for appearance in any legal proceeding pertaining to school business or the performance of jury duty. A teacher taking such leave shall reimburse the school district for any fees he receives as a juror or witness other than mileage reimbursement.

D.      Not exceeding five (5) days at any one time in the event of a death of a teacher's spouse, child, son-in-law, daughter-in-law, parent, father-in-law, mother-in-law, brother-in-law, sister-in-law, sibling, grandchildren and grandparents.

E.      Teachers desiring to attend conferences and workshops shall submit their written requests for conference attendance on conference request forms to their principal and, if approved by the Superintendent shall be reimbursed for reasonable expenses on the presentation of an itemized statement with receipts wherever possible. All teachers attending such conference shall receive reimbursement for mileage at the rate per mile consistent with the Federal I.R.S. allowance as confirmed by the Board of Education at its Reorganization meeting in July of each year, plus actual expense documented by receipt for tolls. Reimbursement at this rate shall be made only for each private carrier; reimbursement shall be limited to the amount charged by the common carrier.

The Association shall be privileged to designate one (1) of its officers to attend to association business for a period not in excess of the sum total of three (3) days.

**ARTICLE 12:**                    **EXTENDED LEAVES OF ABSENCE**

A.      A child care leave of absence may be used by a teacher to permit him/her to care for a newly-born infant, foster or adopted child, and may be used prior to the birth or adoption to attend to matters in preparation for same. Such leave shall be

9

without pay or other benefits, and shall not exceed two (2) years duration, unless extended by the District. Leave return dates for more than twelve (12) week leaves shall correspond with the end or the beginning of a semester unless extended by the Board of Education. Applications for such leaves shall be made at least thirty (30) days prior to the intended commencement of such leave, where possible. The application shall include the dates requested to leave and return.

B.     A leave of absence may be granted at the discretion of the Board of Education without pay of up to two (2) years to any teacher who joins the Peace Corps, Vista or National Teacher Corps, and up to one (1) year for service as an exchange teacher and is a full time participant in such programs. Upon return from such leave, a teacher will be considered as if he were actively employed by the Board during the leave and will be placed on the salary schedule at the step at which he left. No more than 2% of the staff shall be on leave at any one time for these purposes. A leave of absence without any pay or increment of up to one (1) year or more may be granted for personal reasons at the discretion of the Board of Education.

C.     Any teacher whose personal illness extends beyond the period of accumulated sick leave may, at the discretion of the Board of Education, be granted a leave of absence for such time as is necessary for complete recovery from such illness up to a maximum of two (2) years. A doctor's certificate attesting to fitness may be required as a condition precedent to the return.

D.     All benefits which are then currently available and to which a tenured teacher was entitled at the time his leave of absence commenced, including the balance of unused accumulated sick leave, will be restored to him upon his return and he shall, if practicable, be assigned to the same position he held at the time said leave commenced. A teacher who returns from such leave will be placed on at least the same step of the salary schedule he was on when the leave commenced.

E.     All requests for leave, extension or renewal of leave will be applied for and granted or denied in writing, and if granted, at the same time, stating the duration of the leave or extension. A teacher on a leave of absence for a school year or more shall notify the Superintendent of Schools as to his intention to return to service at least six (6) months prior to the expiration date of such leave.

F.     For non-tenure teachers, extended leave shall be an interruption of the probationary period and not in lieu of service in meeting the requirements for serving a probationary period. No teacher shall return from any approved leave except at the commencement of the school year after giving the required notice.

G.     In the event that a requested leave shall be for a period of six (6) months or less, then at the same time that the application for leave shall be submitted to the Board of Education, the teacher shall indicate, to the extent possible, the exact date that he/she shall return to his/her normal duties. If a person on leave wishes to obtain Health Insurance, he/she shall have the right to do so upon payment of the total, full premium provided that the insurer agrees to accept such liability.

## ARTICLE 13:              SALARY

A.     Payment. All teachers covered by this agreement shall be paid every other Friday. All such teachers shall have the option of being paid on a twelve (12) month or the (10) month basis. Teachers who choose the former shall receive the balance of their salary in the final check in JUNE, but teachers shall have only one option during the school year. Staff members may choose salary payments through regular paychecks or through direct deposit subject to the Districts ability to provide such service.

Increase to the salary schedule will be:

Increase **2004-05** School Year - 3% plus step

Increase **2005-06** – 3.5% plus step

Increase **2006-07** – 3.5% plus step

Increase **2007-08** – 3% plus step

Nurses 87% of Schedule scale – effective July 1, 2004 and
90% of Schedule scale effective July 1, 2005 of the BA Scale.

Increase to the extra-curricular/athletic schedule will be:

2004-05 - 5%
2005-06 - 5%
2006-07 - 5%
2007-08 – 5%

Longevity – effective July 1, 2005 for employees upon completing twenty (20) years of service will be entitled to receive $1,000 per year. The twenty (20) year longevity will increase to $2,000, effective July 1, 2007.

B.  <u>Salary and Extra-Curricular Schedules.</u>  The basic salary and extra-curricular schedules are appended to and considered a part of this agreement.

C.  <u>Personnel with an Additional 1/10th Assignment.</u>  All personnel, receiving an additional 1/10 on the teachers' base salary must adhere to the following contract conditions:

1.  They will work two (2) days prior to the opening of school in the month of September, if the calendar allows.

2.  They will work five (5) additional days, or up to June 30, whichever occurs first, after the last day of school as specified by the school calendar.

3.  They will work one hour beyond the contract requirements of the classroom teacher.

4.  This additional time is to be a minimum of 180 hours a year including evening meetings with students and parents.

5.          For these services rendered related to additional time required the amount of 10% will be added to base salary.

6.          For each summer month of additional service, 1/10th of the salary contracted as of July 1, of that year will be paid.

7.          Guidance counselors shall be responsible for administering Saturday tests and to be present as needed.

D.          The daily rate of pay (per diem) will be 1/200th of the yearly rate of pay.

E.          Summer Curriculum Work will be compensated at the daily rate of $100.00 in 2005; $110.00 in 2006; and $125.00 in 2007.

## ARTICLE 14:          DUES DEDUCTION

The Board agrees to deduct the several amounts indicated in the authorization furnished in the uniform amount to be designated by the teachers, per pay check from the several salaries of the teachers and to transmit such sums to the Town of Highlands Teachers' Association monthly. Authorizations must be received fifteen (15) days before the pay day when deductions begin.

## ARTICLE 15:          PAYROLL SAVINGS BOND PLAN AND CREDIT UNION

A.          A teacher shall be afforded the opportunity to purchase U.S. Savings Bonds through payroll deductions according to one of the following plans:

1.          Eight $50.00 Bonds @ $25.00 each.
2.          Eight $75.00 Bonds @ $37.50 each.
3.          Eight $100.00 Bonds @ $50.00 each.

These bonds shall be purchased and delivered in a timely manner.

B.          Payments will be deducted for those wishing to join the Hudson Heritage Federal Credit Union.

13

## ARTICLE 16:                    HEALTH AND INSURANCE BENEFITS

A.      Effective July 1, 2005 and thereafter all active employees shall contribute 5% towards the cost of monthly health insurance premiums for individual or family coverage, as selected by the employee.  The Board will assume the cost of all other monthly health insurance premiums for full-time staff members and their families.  The benefits under any health plan furnished by the district must be continuously comparable to those given under the plan presently in effect.  Any change in health plan or carrier will be subject to teacher input.

B.      For staff members and their families retiring on or after July 1, 1974, the Board will continue to pay full costs of health insurance premiums until such time as the member reaches Medicare age, at which time health insurance premiums will also be paid under that plan.  Staff Members retiring on or after July 1, 2006 will contribute the same dollar amount each year in retirement as they contributed in their last full year as an active employee.  In order to be eligible for retiree health insurance, a teacher must serve at least fifteen (15) years in the District and be eligible to receive payments from the New York State Teachers' Retirement System without penalty.

C.      Effective July 1, 2005, $1,375.00 will be offered to an individual member declining membership in the comprehensive health plan; $2,250.00 will be offered to anyone declining membership in the family plan.  Payment will be made in a lump sum at the end of the school year.

D.      Anyone who is employed in the future in a full-time position and whose position is reduced to part-time due to a reduction in force will continue to receive health insurance coverage provided to full-time employees.

E.    The District shall offer a Health Maintenance Organization option for any full-time teacher who wishes this form of medical insurance. If the cost exceeds that presently paid by the District for the medical plan, the teacher choosing the HMO shall bear the additional expense. Payments will be payroll deductible.

F.    Any teacher who works less than full-time will receive health insurance paid for by the District at the prorata amount that the employee works (e.g., employee working .2 will receive 20% of the cost of health insurance premiums paid for by the District).

G.    The Town of Highlands Teachers' Association may set up a dental plan for its members. Payments will be payroll deductible.

H.    [Effective July 1, 1996] Any unit member whose spouse is eligible for family coverage under the Orange-Ulster County Health Insurance Plan shall be ineligible for health insurance coverage from this School District except for individual coverage during the last year of employment preceding retirement from the District or in the event that s/he seeks individual coverage and his/her spouse is also enrolled for individual coverage only. If the spouse is subject to a contractual provision or policy which establishes the same restriction set forth above, the Plan's rule for determining eligibility will apply. However, this restriction shall not apply if the effect would be to leave the spouse or children uninsured by reason of how custody and support issues have been determined by the parents or a court of law; to leave the family uninsured by reason of one spouse's coverage maximum being exhausted; or to force the spouse to relinquish Plan I or II coverage before the window period for a change-over arrives. The unit member shall be entitled to the family plan buy-out provided for in paragraph "C", above, if the restriction on dual coverage, as stated hereinabove, applies to him/her.

The buy-out amount for those subject to the restrictions set forth above shall be $2,250.00.

15

**ARTICLE 17:**            <u>QUALITY EDUCATIONAL DEVELOPMENT</u>

A.        Monday only will be reserved for obligatory faculty meetings. In the event that Monday is a holiday, these meetings will be held on Tuesday. Every effort will be made to limit this meeting to one hour. If by mutual consent of a Building Administrator and the staff of that building there is a more suitable day than Monday, another day may be selected.

B.        A small committee of the Association and the Administration will consider whether there are ways to relate pupil progress to teacher performance and, if possible, also to create some tangible recognition or various levels of performance. The President of the Association and the Superintendent of Schools will appoint members from each area.

       The Board of Education shall study accreditation of the school.

C.        The teachers shall have the right to plan one District Conference day per school year. The District will pay the actual and reasonable expenses incident thereto as long as these expenses have been approved by the Superintendent of Schools.

**ARTICLE 18:**            <u>TEXTBOOKS AND SUPPLIES</u>

       The purchase of additional textbooks and other instructional materials, changes in such materials or selection of new materials shall be made by the school district only after the School District administrative representative has met with the teachers and heads of departments whose fields of teaching are involved. Such consultation shall be conducted in good faith by all interested parties by the end of the school year, except in emergency situation with a view of adopting the policy and/or purchasing textbooks most beneficial to the entire educational system.

The calendar will contain a provision for unused snow days to extend planned vacations. The teachers recognize that should an unanticipated emergency closing endanger the instructional calendar, planned day(s) will be removed at the Board's discretion.

C.  High School Teachers will not be required to perform lobby, lounge or lunch duty.

D.  A teacher's day at the elementary and middle school level is seven (7) hours and (15) minutes and a teacher's day at the high school level is seven (7) hous and nineteen (19) minutes.

## ARTICLE 24:        GENERAL PROVISIONS

A.  No teacher shall suffer any professional disadvantage by reason of his membership in the Association or participation in its lawful activities.

B.  No negotiations meetings shall be scheduled by the Board of Education during school hours. The Board and the Association or its representatives shall make itself available at reasonable times and hours for negotiation meetings after school hours. Minutes of official board meetings shall be sent to the Association as soon as possible after such meetings. A copy of the official agenda for the meeting will be sent to the Association two school days prior to the said meeting. If any provisions of this article is found contrary to law, then such provision or application shall not be deemed to be valid and subsisting except to the extent permitted by law, but all other provisions or the application thereof will continue in full force and effect.

## ARTICLE 25:        DURATION

IT IS AGREED BY AND BETWEEN THE PARTIES THAT ANY PROVISION OF THIS AGREEMENT REQUIRING LEGISLATIVE ACTION TO PERMIT ITS IMPLEMENTARY BY AMENDMENT OF LAW OR BY PROVIDING THE

ADDITIONAL FUNDS THEREFOR SHALL NOT BECOME EFFECTIVE UNTIL     (
THE APPROPRIATE LEGISLATIVE BODY HAS GIVEN APPROVAL.
TERM - July 1, 2004 - June 30, 2008
IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day
and year first above written.


BOARD OF EDUCATION                          TOWN OF HIGHLANDS TEACHERS'
HIGHLAND FALLS-FORT MONTGOMERY              ASSOCIATION
CENTRAL SCHOOL DISTRICT                     HIGHLAND FALLS-FORT MONTGOMERY
TOWN OF HIGHLANDS                           CENTRAL SCHOOL DISTRICT
HIGHLAND FALLS, NEW YORK                    TOWN OF HIGHLANDS
                                           HIGHLAND FALLS, NEW YORK


Dr. Philip B. Arbolino


~~Ned Kopald~~   ROXANNE DONNERY            David Sutton


APPENDED WILL BE THE FOUR-YEAR AGREEMENT FOR THE SCHEDULES LISTED
BELOW:

   SALARY SCHEDULES FOR TEACHERS, TEACHER ASSISTANTS AND NURSES:
   2004-2005; 2005-2006; 2006-2007; 2007-2008

   COMPENSATION FOR EXTRA DUTIES: 2004-2005; 2005-2006; 2006-2007; 2007-2008

   SICK BANK

   MENTORING

## ARTICLE 19:    INTERSCHOOL TEACHING

A teacher who must have a car available for authorized transportation and for school emergencies shall be compensated for the use of their cars, provided no school vehicle is available for such use, at the rate per mile consistent with the Federal I.R.S. allowance as confirmed by the Board of Education at its Reorganization meeting in July of each year. Those teachers traveling between buildings will receive an additional 15 minutes beyond their normal lunch hour for travel purposes. Provisions will be made in the handbook of each school regarding the assignment of duties of people who travel between school buildings.

## ARTICLE 20:    TEACHER AND ASSOCIATION RIGHTS

The Association shall be given a place on the Agenda of any Board Meeting on six (6) working days notice.

## ARTICLE 21:    NO STRIKE PLEDGE

There shall be no strike or work stoppage for any reason whatsoever during the term of this agreement.

## ARTICLE 22:    CLASS SIZE AND TEACHING LOAD

A.    Every effort will be made to begin the school year with classes that are in agreement with the State recommended figure in the elementary grades. In the high school and middle school, the normal load will be considered five (5) instructional periods plus one (1) period of supervision per teacher. Student load will not exceed one hundred fifty (150) students per teacher, except in physical education classes. All teachers shall have a duty free lunch period as specified by law. Science teachers assigned to six periods a day (class and lab included) will not be assigned a supervisory period on that day.

B.      If any teacher is directed to teach more than a normal load, s/he shall be compensated according to the extent of the extra load.  Teachers with no prior teaching experience will not be assigned a sixth period during the probationary period.

C.      As a normal rule, no academic teacher shall be given a teaching assignment which requires an unreasonable number of preparations.

D.      As a matter of professionalism, teachers recognize that emergencies arise which cannot be reasonably anticipated by the Administration, and they agree to substitute for their professional colleagues without charge or compensation from the Board of Education the first five (5) times they are called upon to serve during any school year.  Thereafter, they shall be compensated at the rate of  $35.00 per class period effective July 1, 2005; and $38.00 effective July 1, 2006.

E.      At the Elementary level if any teacher's preparation period is interrupted for a CSE or a CST meeting, the elementary teacher will be provided with his or her preparation period at another time during the same day, absent emergency circumstances, in which case the teacher will receive his or her preparation period no more than two (2) days thereafter.


## ARTICLE 23:      LENGTH OF TEACHER SCHOOL DAY AND SCHOOL YEAR

A.      The teacher school day shall begin 15 minutes prior to the student day in the several buildings.  Effective July 1, 2001, the teacher workday shall be increased by 30 minutes per day.  Mondays shall be reserved for faculty meetings and the teachers may be excused each Friday or on the eve of school holiday and Mondays when there are no faculty meetings after student dismissal.    Bus supervision and detention shall continue.

B.      Teachers shall not be required to work in excess of 184 days.  Any unused snow days in excess of 184 shall be returned.  The Board agrees to utilize any unused snow/emergency days in the school calendar to extend vacation periods.

18

## SICK LEAVE BANK

The Highland Falls-fort Montgomery Central School District and the Town of Highlands Teachers' Association agree to establish a Sick Leave Bank (SLB) authorized July 1, 2003 and effective July 1, 2005.

**PURPOSE:**

The purpose of the SLB is to provide income protection by supplementing members' exhausted individual sick leave entitlement in cases of catastrophic, long-term disabling illnesses or accidents that require extensive absence from employment.

**GOVERANCE:**

The SLB governing committee will be established to administer the SLB. The committee will consist of not more than three (3) delegates appointed by the Superintendent and the President of the T.H.T.A. respectively. Each delegation, (not to exceed three (3) members per delegation), will have one vote for a total SLB governing committee vote of two (2). The committee must concur in writing to any award from the SLB.

**ELIGIBILITY:**

All full time members of the HFFMCSD who have sick leave entitlement are eligible to participate.

A.  Members who wish to participate may do so by advising the SLB committee in writing no later than October 1st of the year the SLB becomes effective. Donated sick days will be deducted from the individual's sick day entitlement for the year in which SLB participation becomes effective.

B.  New employees hired after the initial enrollment period may elect to participate in the SLB providing written notice within fourteen (14) days of board appointment.

C.  Eligible employees who do not join at the time of their first eligibility may elect to participate in any subsequent year providing written notice by June 15th of the current school year. Participation will become effective July 1st immediately following and the donated sick days will be deducted from their current year sick leave entitlement.

D.  Members donating the applicable number of days will be deemed members of the SLB and entitled to make application for withdrawal from the sick bank..

21

**CONTRIBUTIONS:**

A.    Each member who wished to participate in the SLB shall submit to the SLB committee a written waiver of two (2) days accumulated sick leave. The unused sick days in the bank will be cumulative and will be carried forward from year to year. Once contributions are made they may not be withdrawn.

B.    Any eligible employee who has accumulated the maximum number of sick leave B.Days (300) can contribute up to a maximum of one (1) additional day per year to the SLB.

C.    The bank will be replenished when the number in the bank falls below one day per full time eligible employee of the district. Members who fail to contribute additional days upon replenishment, as directed by the SLB governing committee, will be terminated from the SLB.

**PROCEDURES FOR WITHDRAWALS:**

Any member who has a catastrophic, long-term, disabling illness or accident may apply for the SLB governing committee for a SLB award. The following conditions will apply:

A.    The member, or in event of incapacitation, the member's designee, must make a written application to the SLB governing committee containing medical evidence attesting to the medical condition.

B.    The employee must wait twenty (20) days after exhausting all sick and personal leave entitlement before becoming eligible for SLB days. In the event the employee has maintained an average of fifty percent (50%) of the sick/personal leave entitlement during their period of employment in the District, the twenty (20) day waiting period will be waived by the SLB governing committee. Therefore, the employee would be able to draw directly from the bank and not lose twenty (20) days of pay as outlined above.

C.    The applicant will not be allowed to apply after being adjudged permanently incapacitated or directly after any paid or unpaid leaves (Workers' Compensation).

D.    No SLB withdrawal may exceed 180 days during the duration of employment.

E.    SLB salary entitlement will be based on the full amount of the employee's applicable per diem salary.

F.    All decisions of the SLB governing committee shall be in writing.

G.    Decisions of the SLB governing committee will be deemed nongrievable.

## MENTORING

**A.    THE MENTORING PROGRAM**

1.    The Mentoring Program provides to first year teachers a peer mentor selected by the Building administrator. The mentor will provide the first year teacher with assistance and support in the achievement of goals, problem solving, and the fulfillment of responsibilities.

2.    The mentor will meet with the teacher as early in the school year as possible to develop a professional, collegial relationship based upon trust and confidentiality. The mentor will not conduct formal observations, but will be available to observe the teacher and offer informal suggestions for improvement. The mentor will normally be expected to provide at least fifteen (15) hours of mentoring per semester. Mentors will be provided with release time from twelve (12) class periods throughout the course of a school year to carry out their responsibilities.

3.    All first year teachers are required to participate in the Mentoring Program that provides the teacher with the assistance and support of a senior tenured teacher in the achievement of goals, problem solving and fulfillment of responsibilities. The school administrator, in consultation with the mentor may require a teacher to participate in the Mentoring Program during the teacher's second and third year of employment.

**B.    MENTOR SELECTION**

1.    Tenured teachers interested in becoming mentors must complete an application and return it to the building administrator. The building administrator will review all applications and supportive materials.

2.    Criteria for mentor Selection:

    a.    The applicant must be a full-time tenured teacher in the District.
    b.    The applicant must demonstrate expertise in teaching.
    c.    The applicant must be willing to give the time necessary for the task.
    d.    The applicant must demonstrate effective interpersonal skills.
    e.    The applicant must be willing to participate in training, coaching, and conferencing.

C. **DUTIES OF THE MENTOR**

    1.    The school administrator is responsible for the evaluation of the instructional staff. A mentor is not an evaluator, but a source of professional support and assistance to the mentee.

    2.    Specific responsibilities of the mentor include:

        a.    Meeting weekly with the mentee.
        b.    Keeping an informal log of all mentoring activities.
        c.    Informally observing and conferencing with the mentee.
        d.    Communicating to the mentee the concerns of the administrator.
        e.    Maintaining confidentiality.
        f.    Assisting the mentee with such professional matters as daily planning, routine procedures, student evaluation, parent conferencing, management skills, classroom organization, curriculum planning, and instructional strategies.
        g.    Attending formal and informal conferences.

D. **COMPENSATION OF MENTORS**

Mentors will receive a stipend of $1,000.00 in the 2004-05 school year. Increase in the stipend in subsequent years will be th e same as the increases in the teacher salary schedule.

04-05   1,000.00
05-06   1,035.00
06-07   1071.23
07-08   1,103.37

## 2004-05 SCHOOL YEAR
## TEACHER SALARY SCHEDULE

| STEP | BA | BA+30 | BA+60 | MA | MA+30 |
|------|-----|-------|-------|-----|-------|
| 1 | 40,618.05 | 42,922.16 | 45,224.21 | 44,147.86 | 46,465.09 |
| 2 | 41,373.04 | 43,675.09 | 45,859.72 | 44,902.85 | 47,212.11 |
| 3 | 42,357.72 | 44,661.83 | 46,969.03 | 45,892.68 | 48,196.79 |
| 4 | 43,394.93 | 45,649.60 | 47,954.74 | 46,877.36 | 49,180.44 |
| 5 | 44,322.23 | 46,635.31 | 48,937.36 | 47,864.10 | 50,165.12 |
| 6 | 45,316.91 | 47,621.02 | 49,923.07 | 48,846.72 | 51,154.95 |
| 7 | 46,850.58 | 50,257.82 | 51,462.92 | 50,383.48 | 52,694.80 |
| 8 | 48,082.46 | 50,383.48 | 52,696.86 | 51,611.24 | 53,920.50 |
| 9 | 49,311.25 | 51,612.27 | 54,536.44 | 52,843.12 | 55,147.23 |
| 10 | 50,542.10 | 52,843.12 | 55,761.11 | 54,071.91 | 56,379.11 |
| 11 | 51,767.80 | 54,381.94 | 56,990.93 | 55,609.70 | 57,916.90 |
| 12 | 54,227.44 | 56,528.46 | 59,449.54 | 57,759.31 | 60,064.45 |
| 13 | 56,379.11 | 58,682.19 | 61,603.27 | 59,910.98 | 62,216.12 |
| 14 | 58,222.81 | 60,830.77 | 63,443.88 | 62,057.50 | 64,366.76 |
| 15 | 60,065.48 | 62,675.50 | 65,287.58 | 63,904.29 | 66,208.40 |
| 16 | 60,065.48 | 64,518.17 | 67,132.31 | 65,747.99 | 68,051.07 |
| 17 | 60,065.48 | 64,518.17 | 67,132.31 | 65,747.99 | 68,051.07 |
| 18 | 60,065.48 | 64,518.17 | 67,132.31 | 65,747.99 | 68,051.07 |
| 19 | 66,959.27 | 71,750.83 | 74,564.79 | 73,075.41 | 75,561.83 |
| 20 | 66,959.27 | 71,750.83 | 74,564.79 | 73,075.41 | 75,561.83 |
| 21 | 66,959.27 | 71,750.83 | 74,564.79 | 73,075.41 | 75,561.83 |
| 22 | 66,959.27 | 71,750.83 | 74,564.79 | 73,075.41 | 75,561.83 |
| 23 | 69,276.77 | 74,065.24 | 76,877.14 | 75,385.70 | 77,872.12 |
| 24 | 69,276.77 | 74,065.25 | 76,877.14 | 75,385.70 | 77,872.12 |
| 25 | 69,276.77 | 74,065.26 | 76,877.14 | 75,385.70 | 77,872.12 |
| 26 | 69,276.77 | 74,065.27 | 76,877.14 | 75,385.70 | 77,872.12 |
| 27 | 73,392.65 | 78,185.24 | 80,993.02 | 79,505.70 | 81,988.00 |

Item 1:    Credit will be given for graduate work at the rate of 76.76 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b)  Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,077.85.

Item 4:  The amount of payment for in-service credit is $38.91 per hour.

## 2005-06 SCHOOL YEAR
## TEACHER SALARY SCHEDULE

| STEP | BA | BA+30 | BA+60 | MA | MA+30 |
|---|---|---|---|---|---|
| 1 | 42,039.68 | 44,424.44 | 46,807.06 | 45,693.04 | 48,082.05 |
| 2 | 42,821.10 | 45,203.72 | 47,464.81 | 46,474.45 | 48,864.53 |
| 3 | 43,840.24 | 46,224.99 | 48,612.95 | 47,498.92 | 49,883.68 |
| 4 | 44,913.75 | 47,247.34 | 49,633.16 | 48,518.07 | 50,901.76 |
| 5 | 45,883.86 | 48,267.55 | 50,650.17 | 49,539.34 | 51,920.90 |
| 6 | 46,903.01 | 49,287.76 | 51,670.38 | 50,556.36 | 52,945.37 |
| 7 | 48,490.35 | 52,016.84 | 53,264.12 | 52,146.90 | 54,539.12 |
| 8 | 49,765.35 | 52,156.90 | 54,541.25 | 53,417.63 | 55,807.72 |
| 9 | 51,037.14 | 53,418.70 | 56,445.22 | 54,692.63 | 57,077.38 |
| 10 | 52,311.08 | 54,692.63 | 57,712.75 | 55,964.43 | 58,352.38 |
| 11 | 53,579.67 | 56,285.00 | 58,985.61 | 57,556.04 | 59,943.99 |
| 12 | 56,125.40 | 58,506.96 | 61,530.27 | 59,780.89 | 62,166.71 |
| 13 | 58,352.38 | 60,736.07 | 63,759.38 | 62,007.86 | 64,393.68 |
| 14 | 60,260.61 | 62,959.85 | 65,664.42 | 64,229.51 | 66,619.60 |
| 15 | 62,167.77 | 64,869.14 | 67,572.65 | 66,140.94 | 68,525.69 |
| 16 | 62,167.77 | 66,776.31 | 69,481.94 | 68,049.17 | 70,432.86 |
| 17 | 62,167.77 | 66,776.31 | 69,481.94 | 68,049.17 | 70,432.86 |
| 18 | 62,167.77 | 66,766.31 | 69,481.94 | 68,049.17 | 70,432.86 |
| 19 | 69,302.84 | 74,262.11 | 77,174.56 | 75,633.05 | 78,206.94 |
| 20 | 69,302.84 | 74,262.11 | 77,174.56 | 75,633.05 | 78,206.94 |
| 21 | 69,302.84 | 74,262.11 | 77,174.56 | 75,633.05 | 78,206.94 |
| 22 | 69,302.84 | 74,262.11 | 77,174.56 | 75,633.05 | 78,206.94 |
| 23 | 71,701.46 | 76,657.52 | 79,567.84 | 78,024.20 | 80,597.64 |
| 24 | 71,701.46 | 76,657.52 | 79,567.84 | 78,024.20 | 80,597.64 |
| 25 | 71,701.46 | 76,657.52 | 79,567.84 | 78,024.20 | 80,597.64 |
| 26 | 71,701.46 | 76,657.52 | 79,567.84 | 78,024.20 | 80,597.64 |
| 27 | 75,961.39 | 80,921.72 | 83,827.78 | 82,288.40 | 84,857.58 |

Item 1:    Credit will be given for graduate work at the rate of 79.45 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria: (a) Meet the requirements of a degree program;
(b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,115.57

Item 4: The amount of payment for in-service credit is $40.27 per hour.

Item 5: Employees completing twenty (20) years will be entitled to receive $1,000.00 for longevity.

# 2006-07 SCHOOL YEAR
# TEACHER SALARY SCHEDULE

| STEP | BA | BA+30 | BA+60 | MA | MA+30 |
|---|---|---|---|---|---|
| 1 | 43,511.07 | 45,979.29 | 48,445.30 | 47,292.30 | 49,764.93 |
| 2 | 44,319.84 | 46,785.85 | 49,126.08 | 48,101.06 | 50,574.79 |
| 3 | 45,374.65 | 47,842.87 | 50,314.40 | 49,161.39 | 51,629.61 |
| 4 | 46,485.73 | 48,900.99 | 51,370.32 | 50,216.20 | 52,683.32 |
| 5 | 47,489.79 | 49,956.91 | 52,422.92 | 51,273.22 | 53,738.13 |
| 6 | 48,544.61 | 51,012.83 | 53,478.84 | 52,325.83 | 54,798.46 |
| 7 | 50,187.51 | 53,837.43 | 55,128.37 | 53,972.04 | 56,447.99 |
| 8 | 51,507.13 | 53,972.04 | 56,450.19 | 55,287.25 | 57,760.99 |
| 9 | 52,823.44 | 55,288.35 | 58,420.80 | 56,606.87 | 59,075.09 |
| 10 | 54,141.96 | 56,606.87 | 59,732.70 | 57,923.18 | 60,394.71 |
| 11 | 55,454.96 | 58,255.29 | 61,050.11 | 59,570.50 | 62,042.03 |
| 12 | 58,089.79 | 60,554.70 | 63,683.83 | 61,873.22 | 64,342.54 |
| 13 | 60,394.71 | 62,861.83 | 65,990.96 | 64,178.14 | 66,647.46 |
| 14 | 62,369.73 | 65,163.44 | 67,962.67 | 66,477.55 | 68,951.28 |
| 15 | 64,343.64 | 67,139.56 | 69,937.69 | 68,455.87 | 70,924.09 |
| 16 | 64,343.64 | 69,113.47 | 71,913.81 | 70,430.89 | 72,898.01 |
| 17 | 64,343.64 | 69,113.47 | 71,913.81 | 70,430.89 | 72,898.01 |
| 18 | 71,728.44 | 69,113.47 | 71,913.81 | 70,430.89 | 72,898.01 |
| 19 | 71,728.44 | 76,861.28 | 79,875.67 | 78,280.21 | 80,943.72 |
| 20 | 71,728.44 | 76,861.28 | 79,875.67 | 78,280.21 | 80,943.72 |
| 21 | 71,728.44 | 76,861.28 | 79,875.67 | 78,280.21 | 80,943.72 |
| 22 | 71,728.44 | 76,861.28 | 79,875.67 | 78,280.21 | 80,943.72 |
| 23 | 74,211.01 | 79,340.54 | 82,352.71 | 80,755.05 | 83,418.56 |
| 24 | 74,211.01 | 79,340.54 | 82,352.71 | 80,755.05 | 83,418.56 |
| 25 | 74,211.01 | 79,340.54 | 82,352.71 | 80,755.05 | 83,418.56 |
| 26 | 74,211.01 | 79,340.54 | 82,352.71 | 80,755.05 | 83,418.56 |
| 27 | 78,620.04 | 83,753.98 | 86,761.75 | 85,168.49 | 87,827.60 |

Item 1:    Credit will be given for graduate work at the rate of 82.23 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,154.61

Item 4:  The amount of payment for in-service credit is $41.68 per hour.

Item 5:  Employees completing twenty (20) years will be entitled to receive $1,000.00 for longevity.

# 2007-08 SCHOOL YEAR
# TEACHER SALARY SCHEDULE

| STEP | BA | BA+30 | BA+60 | MA | MA+30 |
|------|-----|-------|-------|-----|-------|
| 1 | 44,816.40 | 47,358.67 | 49,898.66 | 48,711.06 | 51,257.87 |
| 2 | 45,649.43 | 48,189.42 | 50,599.86 | 49,544.09 | 52,092.04 |
| 3 | 46,735.89 | 49,278.16 | 51,823.83 | 50,636.23 | 53,178.50 |
| 4 | 47,880.31 | 50,368.02 | 52,911.43 | 51,722.69 | 54,263.82 |
| 5 | 48,914.49 | 51,455.62 | 53,995.61 | 52,811.42 | 55,350.28 |
| 6 | 50,000.95 | 52,543.21 | 55,083.21 | 53,895.60 | 56,442.42 |
| 7 | 51,693.14 | 55,452.56 | 56,782.22 | 55,591.21 | 58,141.43 |
| 8 | 53,052.35 | 55,591.21 | 58,143.70 | 56,945.87 | 59,493.82 |
| 9 | 54,408.15 | 56,947.01 | 60,173.42 | 58,305.08 | 60,847.34 |
| 10 | 55,766.22 | 58,305.08 | 61,524.68 | 59,660.88 | 62,206.55 |
| 11 | 57,118.61 | 60,002.95 | 62,881.61 | 61,357.62 | 63,903.29 |
| 12 | 59,832.48 | 62,371.34 | 65,594.35 | 63,729.41 | 66,272.82 |
| 13 | 62,206.55 | 64,747.68 | 67,970.69 | 66,103.48 | 68,646.89 |
| 14 | 64,240.82 | 67,118.35 | 70,001.55 | 68,471.87 | 71,019.82 |
| 15 | 66,273.95 | 69,135.75 | 72,035.82 | 70,509.55 | 73,051.82 |
| 16 | 66,273.95 | 71,186.88 | 74,071.22 | 72,543.82 | 75,084.95 |
| 17 | 66,273.95 | 71,186.88 | 74,071.22 | 72,543.82 | 75,084.95 |
| 18 | 66,273.95 | 71,186.88 | 74,071.22 | 72,543.82 | 75,084.95 |
| 19 | 73,880.30 | 79,167.12 | 82,271.94 | 80,628.61 | 83,372.03 |
| 20 | 73,880.30 | 79,167.12 | 82,271.94 | 80,628.61 | 83,372.03 |
| 21 | 73,880.30 | 79,167.12 | 82,271.94 | 80,628.61 | 83,372.03 |
| 22 | 73,880.30 | 79,167.12 | 82,271.94 | 80,628.61 | 83,372.03 |
| 23 | 76,437.34 | 81,720.75 | 84,823.30 | 83,177.70 | 85,921.12 |
| 24 | 76,437.34 | 81,720.75 | 84,823.30 | 83,177.70 | 85,921.12 |
| 25 | 76,437.34 | 81,720.75 | 84,823.30 | 83,177.70 | 85,921.12 |
| 26 | 76,437.34 | 81,720.75 | 84,823.30 | 83,177.70 | 85,921.12 |
| 27 | 80,978.64 | 86,266.60 | 89,364.60 | 87,723.55 | 90,462.42 |

Item 1:    Credit will be given for graduate work at the rate of 84.70 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria: (a) Meet the requirements of a degree program;
(b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,189.25

Item 4: The amount of payment for in-service credit is $42.93 per hour.

Item 5: Longevity for employees completing twenty (20) years increases to $2,000.00

# 2004-05 SCHOOL YEAR
# Nurse SALARY SCHEDULE

| STEP | BA | BA +30 |
|------|-----|--------|
| 1 | 35,337.70 | 37,342.28 |
| 2 | 35,994.54 | 37,997.33 |
| 3 | 36,851.22 | 38,855.79 |
| 4 | 37,753.59 | 39,715.15 |
| 5 | 38,560.34 | 40,572.72 |
| 6 | 39,425.71 | 41,430.29 |
| 7 | 40,760.00 | 43,724.30 |
| 8 | 41,831.74 | 43,833.63 |
| 9 | 42,900.79 | 44,902.67 |
| 10 | 43,971.63 | 45,973.51 |
| 11 | 45,037.99 | 47,312.29 |
| 12 | 47,177.87 | 49,179.76 |
| 13 | 49,049.83 | 51,053.51 |
| 14 | 50,653.84 | 52,922.77 |
| 15 | 52,256.97 | 54,527.69 |
| 16 | 52,256.97 | 56,130.81 |
| 17 | 52,256.97 | 56,130.81 |
| 18 | 52,256.97 | 56,130.81 |
| 19 | 58,254.56 | 62,423.22 |
| 20 | 58,254.56 | 62,423.22 |
| 21 | 58,254.56 | 62,423.22 |
| 22 | 58,254.56 | 62,423.22 |
| 23 | 60,270.79 | 64,436.76 |
| 24 | 60,270.79 | 64,436.77 |
| 25 | 60,270.79 | 64,436.78 |
| 26 | 60,270.79 | 64,436.78 |
| 27 | 63,851.61 | 68,021.16 |

Item 1:    Credit will be given for graduate work at the rate of 76.76 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b)  Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,077.85.

Item 4:  The amount of payment for in-service credit is $38.91 per hour.

# 2005-06 SCHOOL YEAR
# NURSE SALARY SCHEDULE

| STEP | BA | BA +30 |
|------|------|--------|
| 1 | 37,835.71 | 39,982.00 |
| 2 | 38,538.99 | 40,683.35 |
| 3 | 39,456.22 | 41,602.49 |
| 4 | 40,422.38 | 42,522.61 |
| 5 | 41,295.47 | 44,197.78 |
| 6 | 42,212.71 | 43,440.80 |
| 7 | 43,641.32 | 44,358.98 |
| 8 | 44,788.82 | 46,815.16 |
| 9 | 45,933.43 | 46,941.21 |
| 10 | 47,079.97 | 48,076.83 |
| 11 | 48,221.70 | 49,223.37 |
| 12 | 50,512.86 | 52,656.26 |
| 13 | 52,517.14 | 54,662.46 |
| 14 | 54,234.55 | 56,663.87 |
| 15 | 55,950.99 | 58,382.23 |
| 16 | 55,950.99 | 60,098.68 |
| 17 | 55,950.99 | 60,098.68 |
| 18 | 55,950.99 | 60,089.68 |
| 19 | 62,372.56 | 66,835.90 |
| 20 | 62,372.56 | 66,835.90 |
| 21 | 62,372.56 | 66,835.90 |
| 22 | 62,372.56 | 66,835.90 |
| 23 | 64,531.31 | 68,991.77 |
| 24 | 64,531.31 | 68,991.77 |
| 25 | 64,531.31 | 68,991.77 |
| 26 | 64,531.31 | 68,991.77 |
| 27 | 68,365.25 | 72,829.55 |

Item 1:    Credit will be given for graduate work at the rate of 79.45 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b)  Meet certification requirements; © Be in the subject area of the teacher's certification.

# 2006-07 SCHOOL YEAR
# NURSE SALARY SCHEDULE

| STEP | BA | BA+30 |
|---|---|---|
| 1 | 39,159.96 | 41,381.36 |
| 2 | 39,887.86 | 42,107.27 |
| 3 | 40,837.19 | 43,058.58 |
| 4 | 41,837.16 | 44,010.89 |
| 5 | 42,740.81 | 44,961.22 |
| 6 | 43,690.15 | 45,911.55 |
| 7 | 45,168.76 | 48,453.69 |
| 8 | 46,356.42 | 48,574.84 |
| 9 | 47,541.10 | 49,759.52 |
| 10 | 48,727.76 | 50,946.18 |
| 11 | 49,909.46 | 52,429.76 |
| 12 | 52,280.81 | 54,499.23 |
| 13 | 54,355.24 | 56,575.65 |
| 14 | 56,132.76 | 58,647.10 |
| 15 | 57,909.28 | 60,425.60 |
| 16 | 57,909.28 | 62,202.12 |
| 17 | 57,909.28 | 62,202.12 |
| 18 | 64,555.60 | 62,202.12 |
| 19 | 64,555.60 | 69,175.15 |
| 20 | 64,555.60 | 69,175.15 |
| 21 | 64,555.60 | 69,175.15 |
| 22 | 64,555.60 | 69,175.15 |
| 23 | 66,789.91 | 71,406.49 |
| 24 | 66,789.91 | 71,406.49 |
| 25 | 66,789.91 | 71,406.49 |
| 26 | 66,789.91 | 71,406.49 |
| 27 | 70,758.04 | 75,378.58 |

Item 1:   Credit will be given for graduate work at the rate of  82.23 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,154.61

Item 4:  The amount of payment for in-service credit is $41.68 per hour.

Item 5:  Longevity for employees completing twenty (20) years increases to 2,000.00

# 2007-08 SCHOOL YEAR
# Nurse SALARY SCHEDULE

| STEP | BA | BA+30 |
|---|---|---|
| 1 | 40,334.76 | 42,622.80 |
| 2 | 41,084.49 | 43,370.48 |
| 3 | 42,062.30 | 44,350.34 |
| 4 | 43,092.28 | 45,331.22 |
| 5 | 44,023.04 | 46,310.06 |
| 6 | 45,000.86 | 47,288.89 |
| 7 | 46,523.83 | 49,907.30 |
| 8 | 47,747.12 | 50,032.09 |
| 9 | 48,967.34 | 51,252.31 |
| 10 | 50,189.60 | 52,474.57 |
| 11 | 51,406.75 | 54,002.66 |
| 12 | 53,849.23 | 56,134.21 |
| 13 | 55,985.90 | 58,272.91 |
| 14 | 57,816.74 | 60,406.52 |
| 15 | 59,646.56 | 62,222.18 |
| 16 | 59,646.56 | 64,068.19 |
| 17 | 59,646.56 | 64,068.19 |
| 18 | 59,646.56 | 64,068.19 |
| 19 | 66,492.27 | 71,250.41 |
| 20 | 66,492.27 | 71,250.41 |
| 21 | 66,492.27 | 71,250.41 |
| 22 | 66,492.27 | 71,250.41 |
| 23 | 68,793.61 | 73,548.68 |
| 24 | 68,793.61 | 73,548.68 |
| 25 | 68,793.61 | 73,548.68 |
| 26 | 68,793.61 | 73,548.68 |
| 27 | 72,880.78 | 77,639.94 |

Item 1:    Credit will be given for graduate work at the rate of  84.70 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b)  Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,189.25

Item 4:  The amount of payment for in-service credit is $42.93 per hour.

# 2004-05 SCHOOL YEAR
# TEACHER ASSISTANT SALARY SCHEDULE

| STEP | BA |
|---|---|
| 1 | 16,247.22 |
| 2 | 16,549.22 |
| 3 | 16,943.09 |
| 4 | 17,357.97 |
| 5 | 17,728.89 |
| 6 | 18,126.76 |
| 7 | 18,740.23 |
| 8 | 19,232.98 |
| 9 | 19,724.50 |
| 10 | 20,216.84 |
| 11 | 20,707.12 |
| 12 | 21,690.98 |
| 13 | 22,551.64 |
| 14 | 23,289.12 |
| 15 | 24,026.19 |
| 16 | 24,026.19 |
| 17 | 24,026.19 |
| 18 | 24,026.19 |
| 19 | 26,783.71 |
| 20 | 26,783.71 |
| 21 | 26,783.71 |
| 22 | 26,783.71 |
| 23 | 27,710.71 |
| 24 | 27,710.71 |
| 25 | 27,710.71 |
| 26 | 27,710.71 |
| 27 | 29,357.06 |

Item 1:    Credit will be given for graduate work at the rate of 76.76 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b)  Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,077.85.

Item 4: The amount of payment for in-service credit is $38.91 per hour.

## 2005-06 SCHOOL YEAR
## TEACHER ASSISTANT SALARY SCHEDULE

| STEP | BA |
|---|---|
| 1 | 16,815.87 |
| 2 | 17,128.44 |
| 3 | 17,536.10 |
| 4 | 17,965.50 |
| 5 | 18,353.54 |
| 6 | 18,761.20 |
| 7 | 19,396.14 |
| 8 | 19,906.14 |
| 9 | 20,414.86 |
| 10 | 20,924.43 |
| 11 | 21,431.87 |
| 12 | 22,450.16 |
| 13 | 23,340.95 |
| 14 | 24,104.24 |
| 15 | 24,867.11 |
| 16 | 24,867.11 |
| 17 | 24,867.11 |
| 18 | 24,867.11 |
| 19 | 27,721.14 |
| 20 | 27,721.14 |
| 21 | 27,721.14 |
| 22 | 27,721.14 |
| 23 | 28,680.58 |
| 24 | 28,680.58 |
| 25 | 28,680.58 |
| 26 | 28,680.58 |
| 27 | 30,384.56 |

Item 1:    Credit will be given for graduate work at the rate of 79.45 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools and meet one of the following criteria:  (a) Meet the requirements of a degree program; (b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,115.57

Item 4:  The amount of payment for in-service credit is $40.27 per hour.

Item 5:  Employees completing twenty (20) years will be entitled to receive $1,000.00 for longevity.

# 2006-07 SCHOOL YEAR
# TEACHER ASSISTANT SALARY SCHEDULE

| STEP | BA |
|------|-----------|
| 1 | 17,404.43 |
| 2 | 17,727.94 |
| 3 | 18,149.86 |
| 4 | 18,594.29 |
| 5 | 18,995.92 |
| 6 | 19,417.84 |
| 7 | 20,075.00 |
| 8 | 20,602.85 |
| 9 | 21,129.38 |
| 10 | 21,656.78 |
| 11 | 22,181.98 |
| 12 | 23,235.92 |
| 13 | 24,157.88 |
| 14 | 24,947.89 |
| 15 | 25,737.46 |
| 16 | 25,737.46 |
| 17 | 25,737.46 |
| 18 | 28,691.38 |
| 19 | 28,691.38 |
| 20 | 28,691.38 |
| 21 | 28,691.38 |
| 22 | 28,691.38 |
| 23 | 29,684.40 |
| 24 | 29,684.40 |
| 25 | 29,684.40 |
| 26 | 29,684.40 |
| 27 | 31,448.02 |

Item 1:    Credit will be given for graduate work at the rate of  82.23 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,154.61

Item 4: The amount of payment for in-service credit is $41.68 per hour.

Item 5: Longevity for employees completing twenty (20) years increases to 2,000.00

## 2007-08 SCHOOL YEAR
## TEACHER ASSISTANT SALARY SCHEDULE

| STEP | BA |
|---|---|
| 1 | 17,926.56 |
| 2 | 18,259.77 |
| 3 | 18,694.36 |
| 4 | 19,152.12 |
| 5 | 19,565.80 |
| 6 | 20,000.38 |
| 7 | 20,677.26 |
| 8 | 21,220.94 |
| 9 | 21,763.26 |
| 10 | 22,306.49 |
| 11 | 22,847.44 |
| 12 | 23,932.99 |
| 13 | 24,882.62 |
| 14 | 25,696.33 |
| 15 | 26,509.58 |
| 16 | 26,509.58 |
| 17 | 26,509.58 |
| 18 | 26,509.58 |
| 19 | 29,552.12 |
| 20 | 29,552.12 |
| 21 | 29,552.12 |
| 22 | 29,552.12 |
| 23 | 30,574.94 |
| 24 | 30,574.94 |
| 25 | 30,574.94 |
| 26 | 30,574.94 |
| 27 | 32,391.46 |

Item 1:    Credit will be given for graduate work at the rate of  84.70 per Graduate Hour.
In order to qualify for payment, this credit must be approved by the Superintendent of Schools
and meet one of the following criteria:  (a) Meet the requirements of a degree program;
(b) Meet certification requirements; © Be in the subject area of the teacher's certification.

Item 2:    In connection with Item 1 above, credit for salary purposes for graduate credits
will be paid as earned.

Item 3:    Credit will be given for an earned doctorate at the rate of $1,189.25

Item 4:  The amount of payment for in-service credit is $42.93 per hour.

## COACHING SALARIES 2004-05

| Sport | Level | 1st Year | 3rd Year | 5th Year | 8th Year |
|---|---|---|---|---|---|
| Athletic Director | K-12 | 4,456.20 | 4,758.60 | 5,413.80 | 5,970.30 |
| Baseball | Modified | 1,520.40 | 1,747.20 | 2,227.05 | 2,569.35 |
| | Jr Varsity | 1,831.20 | 2,071.65 | 2,547.30 | 2,809.80 |
| | Varsity | 2,467.50 | 2,710.05 | 3,185.70 | 3,512.25 |
| Basketball | Modified Boys&Girls | 1,520.40 | 1,747.20 | 2,227.05 | 2,569.35 |
| | Jr.Varsity Boys&Girls | 2,308.95 | 2,547.30 | 3,185.70 | 3,512.25 |
| | Varsity Boys&Girls | 3,105.90 | 3,500.70 | 4,135.95 | 4,562.25 |
| Cheerleading | Modified | 1,114.05 | 1,202.25 | 1,323.00 | 1,426.55 |
| | Jr. Varsity | 2,228.10 | 2,464.35 | 2,710.05 | 2,987.25 |
| | Varsity | 2,228.10 | 2,464.35 | 2,710.05 | 2,987.25 |
| Crew | Varsity | 2,694.51 | 2,829.23 | 2,970.69 | 3,119.22 |
| Cross Country | Varsity | 1,988.70 | 2,228.10 | 2,864.40 | 3,158.40 |
| | Assistant | 1,124.55 | 1,180.77 | 1,239.80 | 1,301.79 |
| Equestrian | Varsity | 1,575.00 | 1,653.75 | 1,736.43 | 1,823.25 |
| Football | Modified | 1,520.40 | 1,747.20 | 2,227.05 | 2,569.35 |
| | Jr. Varsity | 2,308.95 | 2,547.30 | 3,185.70 | 3,512.25 |
| | Jr. Varsity Assistant | 1,831.20 | 2,071.65 | 2,547.30 | 2,809.80 |
| | Varsity | 3,105.90 | 3,500.70 | 4,135.95 | 4,562.25 |
| | Varsity Assistant | 2,539.95 | 2,802.45 | 3,557.40 | 3,864.00 |
| | Varsity Assistant | 2,539.95 | 2,802.45 | 3,557.40 | 3,864.00 |
| Golf Boys&Girls | Varsity | 1,988.70 | 2,228.10 | 2,864.40 | 3,158.40 |
| Hockey | Varsity | 1,831.20 | 2,071.65 | 2,547.30 | 2,809.80 |
| | Assistant | 798.00 | 919.80 | 1,171.80 | 1,290.45 |
| Lacrosse | Varsity Boys&Girls | 2,467.50 | 2,710.05 | 3,185.70 | 3,512.25 |
| | Assistant - Boys | 1,575.00 | 1,653.75 | 1,736.43 | 1,823.25 |
| Skiing | Varsity | 2,068.50 | 2,171.92 | 22,805.51 | 2,394.53 |
| Soccer | Jr Varsity Boys&Girls | 1,831.20 | 2,071.65 | 2,547.30 | 2,809.80 |
| | Varsity Boys&Girls | 2,308.95 | 2,547.30 | 3,185.70 | 3,512.25 |
| Softball | Modified | 1,520.40 | 1,747.20 | 2,227.05 | 2,569.35 |
| | Jr Varsity | | | | |
| | Varsity | 2,467.50 | 2,710.05 | 3,185.70 | 3,512.25 |
| Swimming | Boy's Varsity | 1,988.70 | 2,228.10 | 2,728.40 | 3,158.40 |
| | Girl's Varsity | 1,988.70 | 2,228.10 | 2,728.40 | 3,158.40 |
| Tennis | Boy's Varsity | 1,988.70 | 2,228.10 | 2,728.40 | 3,158.40 |
| | Girl's Varsity | 1,988.70 | 2,228.10 | 2,728.40 | 3,158.40 |
| Track | Varsity, Winter Boys&Girls | 1,988.70 | 2,228.10 | 2,864.40 | 3,158.40 |
| | Varsity, Spring Boys&Girls | 2,308.95 | 2,547.30 | 3,185.70 | 3,512.25 |
| | Assistant | 1,124.55 | 1,180.77 | 1,239.80 | 1,301.79 |
| Volleyball | Modified | 1,520.40 | 1,747.20 | 2,227.05 | 2,569.35 |
| | Jr Varsity | 1,831.20 | 2,071.65 | 2,547.30 | 2,809.80 |
| | Varsity | 2,308.95 | 2,547.30 | 3,185.70 | 3,512.25 |
| Weight Training | | 1,575.00 | 1,653.75 | 1,736.43 | 1,823.25 |
| Wrestling—MS | | 1,575.00 | 1,653.75 | 1,736.43 | 1,823.25 |
| Timers- Basketball | | 47.25 | 51.45 | 57.75 | 63.00 |

# COACHING SALARIES 2005-06

| Sport | Level | 1st Year | 3rd Year | 5th Year | 8th Year |
|---|---|---|---|---|---|
| Athletic Director | K-12 | 4,679.01 | 4,996.53 | 5,684.49 | 6,268.82 |
| Baseball | Modified | 1,596.42 | 1,834.56 | 2,338.40 | 2,697.82 |
|  | Jr Varsity | 1,922.76 | 2,175.23 | 2,674.67 | 2,950.29 |
|  | Varsity | 2,590.88 | 2,845.55 | 3,344.99 | 3,687.86 |
| Basketball | Modified Boys&Girls | 1,596.42 | 1,834.56 | 2,338.40 | 2,697.82 |
|  | Jr.Varsity Boys&Girls | 2,424.40 | 2,674.67 | 3,344.99 | 3,687.86 |
|  | Varsity Boys&Girls | 3,261.20 | 3,675.74 | 4,342.75 | 4,790.36 |
| Cheerleading | Modified | 1,169.75 | 1,262.36 | 1,389.15 | 1,497.88 |
|  | Jr. Varsity | 2,339.51 | 2,587.57 | 2,845.55 | 3,136.61 |
|  | Varsity | 2,339.51 | 2,587.57 | 2,845.55 | 3,136.61 |
| Crew | Varsity | 2,829.24 | 2,970.69 | 3,119.22 | 3,275.18 |
| Cross Country | Varsity | 2,088.14 | 2,339.51 | 3,007.62 | 3,316.32 |
|  | Assistant | 1,180.78 | 1,239.81 | 1,301.79 | 1,366.88 |
| Equestrian | Varsity | 1,653.75 | 1,736.44 | 1,823.25 | 1,914.41 |
| Football | Modified | 1,596.42 | 1,834.56 | 2,338.40 | 2,697.82 |
|  | Jr. Varsity | 2,424.40 | 2,674.67 | 3,344.99 | 3,687.86 |
|  | Jr. Varsity Assistant | 1,922.76 | 2,175.23 | 2,674.67 | 2,950.29 |
|  | Varsity | 3,261.20 | 3,675.74 | 4,342.75 | 4,790.36 |
|  | Varsity Assistant | 2,666.95 | 2,942.57 | 3,735.27 | 4,057.20 |
|  | Varsity Assistant | 2,666.95 | 2,942.57 | 3,735.27 | 4,057.20 |
| Golf Boys&Girls | Varsity | 2,088.14 | 2,339.51 | 3,007.62 | 3,316.32 |
| Hockey | Varsity | 1,922.76 | 2,175.23 | 2,674.67 | 2,950.29 |
|  | Assistant | 837.90 | 965.79 | 1,230.39 | 1,354.97 |
| Lacrosse | Varsity Boys&Girls | 2,590.88 | 2,845.55 | 3,344.99 | 3,687.86 |
|  | Assistant - Boys | 1,653.75 | 1,736.44 | 1,823.25 | 1,914.41 |
| Skiing | Varsity | 2,171.93 | 2,280.52 | 23,945.79 | 2,514.26 |
| Soccer | Jr Varsity Boys&Girls | 1,922.76 | 2,175.23 | 2,674.67 | 2,950.29 |
|  | Varsity Boys&Girls | 2,424.40 | 2,674.67 | 3,344.99 | 3,687.86 |
| Softball | Modified | 1,596.42 | 1,834.56 | 2,338.40 | 2,697.82 |
|  | Jr Varsity | | | | |
|  | Varsity | 2,590.88 | 2,845.55 | 3,344.99 | 3,687.86 |
| Swimming | Boy's Varsity | 2,088.14 | 2,339.51 | 2,864.82 | 3,316.32 |
|  | Girl's Varsity | 2,088.14 | 2,339.51 | 2,864.82 | 3,316.32 |
| Tennis | Boy's Varsity | 2,088.14 | 2,339.51 | 2,864.82 | 3,316.32 |
|  | Girl's Varsity | 2,088.14 | 2,339.51 | 2,864.82 | 3,316.32 |
| Track | Varsity, Winter Boys&Girls | 2,088.14 | 2,339.51 | 3,007.62 | 3,316.32 |
|  | Varsity, Spring Boys&Girls | 2,424.40 | 2,674.67 | 3,344.99 | 3,687.86 |
|  | Assistant | 1,180.78 | 1,239.81 | 1,301.79 | 1,366.88 |
| Volleyball | Modified | 1,596.42 | 1,834.56 | 2,338.40 | 2,697.82 |
|  | Jr Varsity | 1,922.76 | 2,175.23 | 2,674.67 | 2,950.29 |
|  | Varsity | 2,424.40 | 2,674.67 | 3,344.99 | 3,687.86 |
| Weight Training | | 1,653.75 | 1,736.44 | 1,823.25 | 1,914.41 |
| Wrestling—MS | | 1,653.75 | 1,736.44 | 1,823.25 | 1,914.41 |

## COACHING SALARIES 2006-07

| Sport | Level | 1st Year | 3rd Year | 5th Year | 8th Year |
|---|---|---|---|---|---|
| Athletic Director | K-12 | 4,912.96 | 5,246.36 | 5,968.71 | 6,582.26 |
| | | | | | |
| Baseball | Modified | 1,676.24 | 1,926.29 | 2,455.32 | 2,832.71 |
| | Jr Varsity | 2,018.90 | 2,283.99 | 2,808.40 | 3,097.80 |
| | Varsity | 2,720.42 | 2,987.83 | 3,512.23 | 3,872.26 |
| | | | | | |
| Basketball | Modified Boys&Girls | 1,676.24 | 1,926.29 | 2,455.32 | 2,832.71 |
| | Jr.Varsity Boys&Girls | 2,545.62 | 2,808.40 | 3,512.23 | 3,872.26 |
| | Varsity Boys&Girls | 3,424.25 | 3,859.52 | 4,559.88 | 5,029.88 |
| | | | | | |
| Cheerleading | Modified | 1,228.24 | 1,325.48 | 1,458.61 | 1,573.77 |
| | Jr. Varsity | 2,456.48 | 2,716.95 | 2,987.83 | 3,293.44 |
| | Varsity | 2,456.48 | 2,716.95 | 2,987.83 | 3,293.44 |
| | | | | | |
| Crew | Varsity | 2,970.70 | 3,119.23 | 3,275.19 | 3,438.94 |
| | | | | | |
| Cross Country | Varsity | 2,192.54 | 2,456.48 | 3,158.00 | 3,482.14 |
| | Assistant | 1,239.82 | 1,301.80 | 1,366.88 | 1,435.22 |
| | | | | | |
| Equestrian | Varsity | 1,736.44 | 1,823.26 | 1,914.41 | 2,010.13 |
| | | | | | |
| Football | Modified | 1,676.24 | 1,926.29 | 2,455.32 | 2,832.71 |
| | Jr. Varsity | 2,545.62 | 2,808.40 | 3,512.23 | 3,872.26 |
| | Jr. Varsity Assistant | 2,018.90 | 2,283.99 | 2,808.40 | 3,097.80 |
| | Varsity | 3,424.25 | 3,859.52 | 4,559.88 | 5,029.88 |
| | Varsity Assistant | 2,800.29 | 3,089.70 | 3,922.03 | 4,260.06 |
| | Varsity Assistant | 2,800.29 | 3,089.70 | 3,922.03 | 4,260.06 |
| | | | | | |
| Golf Boys&Girls | Varsity | 2,192.54 | 2,456.48 | 3,158.00 | 3,482.14 |
| | | | | | |
| Hockey | Varsity | 2,018.90 | 2,283.99 | 2,808.40 | 3,097.80 |
| | Assistant | 879.80 | 1,014.08 | 1,291.91 | 1,422.72 |
| | | | | | |
| Lacrosse | Varsity Boys&Girls | 2,720.42 | 2,987.83 | 3,512.23 | 3,872.26 |
| | Assistant - Boys | 1,736.44 | 1,823.26 | 1,914.41 | 2,010.13 |
| | | | | | |
| Skiing | Varsity | 2,280.52 | 2,394.54 | 25,143.07 | 2,639.97 |
| | | | | | |
| Soccer | Jr Varsity Boys&Girls | 2,018.90 | 2,283.99 | 2,808.40 | 3,097.80 |
| | Varsity Boys&Girls | 2,545.62 | 2,808.40 | 3,512.23 | 3,872.26 |
| | | | | | |
| Softball | Modified | 1,676.24 | 1,926.29 | 2,455.32 | 2,832.71 |
| | Jr Varsity | | | | |
| | Varsity | 2,720.42 | 2,987.83 | 3,512.23 | 3,872.26 |
| | | | | | |
| Swimming | Boy's Varsity | 2,192.54 | 2,456.48 | 3,008.06 | 3,482.14 |
| | Girl's Varsity | 2,192.54 | 2,456.48 | 3,008.06 | 3,482.14 |
| | | | | | |
| Tennis | Boy's Varsity | 2,192.54 | 2,456.48 | 3,008.06 | 3,482.14 |
| | Girl's Varsity | 2,192.54 | 2,456.48 | 3,008.06 | 3,482.14 |
| | | | | | |
| Track | Varsity, Winter Boys&Girls | 2,192.54 | 2,456.48 | 3,158.00 | 3,482.14 |
| | Varsity, Spring Boys&Girls | 2,545.62 | 2,808.40 | 3,512.23 | 3,872.26 |
| | Assistant | 1,239.82 | 1,301.80 | 1,366.88 | 1,435.22 |
| | | | | | |
| Volleyball | Modified | 1,676.24 | 1,926.29 | 2,455.32 | 2,832.71 |
| | Jr Varsity | 2,018.90 | 2,283.99 | 2,808.40 | 3,097.80 |
| | Varsity | 2,545.62 | 2,808.40 | 3,512.23 | 3,872.26 |
| | | | | | |
| Weight Training | | 1,736.44 | 1,823.26 | 1,914.41 | 2,010.13 |
| | | | | | |
| Wrestling –MS | | 1,736.44 | 1,823.26 | 1,914.41 | 2,010.13 |
| | | | | | |
| Timers- Basketball | | 52.09 | 56.72 | 63.67 | 69.46 |

## COACHING SALARIES 2007-08

| Sport | Level | 1st Year | 3rd Year | 5th Year | 8th Year |
|---|---|---|---|---|---|
| Athletic Director | K-12 | 5,158.61 | 5,508.67 | 6,267.15 | 6,911.37 |
| Baseball | Modified | 1,760.05 | 2,022.60 | 2,578.09 | 2,974.34 |
|  | Jr Varsity | 2,119.84 | 2,398.19 | 2,948.82 | 3,252.69 |
|  | Varsity | 2,856.44 | 3,137.22 | 3,687.85 | 4,065.87 |
| Basketball | Modified Boys&Girls | 1,760.05 | 2,022.60 | 2,578.09 | 2,974.34 |
|  | Jr.Varsity Boys&Girls | 2,672.90 | 2,948.82 | 3,687.85 | 4,065.87 |
|  | Varsity Boys&Girls | 3,595.47 | 4,052.50 | 4,787.88 | 5,281.37 |
| Cheerleading | Modified | 1,289.65 | 1,391.75 | 1,531.54 | 1,651.41 |
|  | Jr. Varsity | 2,579.30 | 2,852.79 | 3,137.22 | 3,458.12 |
|  | Varsity | 2,579.30 | 2,852.79 | 3,137.22 | 3,458.12 |
| Crew | Varsity | 3,119.23 | 3,275.19 | 3,438.95 | 3,610.89 |
| Cross Country | Varsity | 2,302.17 | 2,579.30 | 3,315.90 | 3,656.24 |
|  | Assistant | 1,301.81 | 1,366.89 | 1,435.22 | 1,506.98 |
| Equestrian | Varsity | 1,823.26 | 1,914.42 | 2,010.13 | 2,110.64 |
| Football | Modified | 1,760.05 | 2,022.60 | 2,578.09 | 2,974.34 |
|  | Jr. Varsity | 2,672.90 | 2,948.82 | 3,687.85 | 4,065.87 |
|  | Jr. Varsity Assistant | 2,119.84 | 2,398.19 | 2,948.82 | 3,252.69 |
|  | Varsity | 3,595.47 | 4,052.50 | 4,787.88 | 5,281.37 |
|  | Varsity Assistant | 2,940.31 | 3,244.19 | 4,118.14 | 4,473.06 |
|  | Varsity Assistant | 2,940.31 | 3,244.19 | 4,118.14 | 4,473.06 |
| Golf Boys&Girls | Varsity | 2,302.17 | 2,579.30 | 3,315.90 | 3,656.24 |
| Hockey | Varsity | 2,119.84 | 2,398.19 | 2,948.82 | 3,252.69 |
|  | Assistant | 923.78 | 1,064.78 | 1,356.50 | 1,493.86 |
| Lacrosse | Varsity Boys&Girls | 2,856.44 | 3,137.22 | 3,687.85 | 4,065.87 |
|  | Assistant - Boys | 1,823.26 | 1,914.42 | 2,010.13 | 2,110.64 |
| Skiing | Varsity | 2,394.55 | 2,514.27 | 26,400.23 | 2,771.97 |
| Soccer | Jr Varsity Boys&Girls | 2,119.84 | 2,398.19 | 2,948.82 | 3,252.69 |
|  | Varsity Boys&Girls | 2,672.90 | 2,948.82 | 3,687.85 | 4,065.87 |
| Softball | Modified | 1,760.05 | 2,022.60 | 2,578.09 | 2,974.34 |
|  | Jr Varsity |  |  |  |  |
|  | Varsity | 2,856.44 | 3,137.22 | 3,687.85 | 4,065.87 |
| Swimming | Boy's Varsity | 2,302.17 | 2,579.30 | 3,158.46 | 3,656.24 |
|  | Girl's Varsity | 2,302.17 | 2,579.30 | 3,158.46 | 3,656.24 |
| Tennis | Boy's Varsity | 2,302.17 | 2,579.30 | 3,158.46 | 3,656.24 |
|  | Girl's Varsity | 2,302.17 | 2,579.30 | 3,158.46 | 3,656.24 |
| Track | Varsity, Winter Boys&Girls | 2,302.17 | 2,579.30 | 3,315.90 | 3,656.24 |
|  | Varsity, Spring Boys&Girls | 2,672.90 | 2,948.82 | 3,687.85 | 4,065.87 |
|  | Assistant | 1,301.81 | 1,366.89 | 1,435.22 | 1,506.98 |
| Volleyball | Modified | 1,760.05 | 2,022.60 | 2,578.09 | 2,974.34 |
|  | Jr Varsity | 2,119.84 | 2,398.19 | 2,948.82 | 3,252.69 |
|  | Varsity | 2,672.90 | 2,948.82 | 3,687.85 | 4,065.87 |
| Weight Training |  | 1,823.26 | 1,914.42 | 2,010.13 | 2,110.64 |
| Wrestling—MS |  | 1,823.26 | 1,914.42 | 2,010.13 | 2,110.64 |
| Timers- Basketball |  | 54.70 | 59.56 | 66.85 | 72.93 |

**COMPENSATION FOR EXTRA-CURRICULAR ACTIVITIES**

| | 2004-05 | | 2005-06 | | 2006-07 | | 2007-08 | |
|---|---|---|---|---|---|---|---|---|
| | YEAR 1 | YEAR 3 | YEAR 1 | YEAR 3 | YEAR 1 | YEAR 3 | YEAR 1 | YEAR 3 |
| Academic League | 1,254 | 1,430 | 1,317 | 1,449 | 1,383 | 1,521 | 1,452 | 1,598 |
| Art Club 3-6 | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Audio Visual Coordinator | 802 | 882 | 842 | 926 | 884 | 972 | 928 | 1,021 |
| Auditorium Coordinator | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Chess Club | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Choral Director-Musical High School | 1,062 | 1,168 | 1,115 | 1,226 | 1,171 | 1,288 | 1,229 | 1,352 |
| Department Coordinators | 1,758 | 1,934 | 1,846 | 2,031 | 1,938 | 2,132 | 2,035 | 2,239 |
| Dramatics Director Spring Musical HS | 1,545 | 1,700 | 1,622 | 1,785 | 1,703 | 1,874 | 1,789 | 1,968 |
| Drama Director HS-Fall Play | 1,405 | 1,546 | 1,475 | 1,623 | 1,549 | 1,704 | 1,626 | 1,790 |
| Drama Director-MS | 1,545 | 1,700 | 1,622 | 1,785 | 1,703 | 1,874 | 1,789 | 1,968 |
| Environmental Club--HS | 1,168 | 1,285 | 1,226 | 1,349 | 1,288 | 1,417 | 1,352 | 1,488 |
| Environmental Club--MS | 1,168 | 1,285 | 1,226 | 1,349 | 1,288 | 1,417 | 1,352 | 1,488 |
| Freshman Class Advisor | 843 | 927 | 885 | 973 | 929 | 1,022 | 976 | 1,073 |
| Guitar Club | 1,062 | 1,168 | 1,115 | 1,226 | 1,171 | 1,288 | 1,229 | 1,352 |
| Interact | 1,115 | 1,227 | 1,171 | 1,288 | 1,229 | 1,353 | 1,291 | 1,420 |
| Homebound Instruction | 37 | 41 | 39 | 43 | 41 | 45 | 43 | 47 |
| Jazz Band HS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Jazz Band MS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Junior Class Advisor | 1,115 | 1,227 | 1,171 | 1,288 | 1,229 | 1,353 | 1,291 | 1,420 |
| Literary Magazine | 1,405 | 1,546 | 1,475 | 1,623 | 1,549 | 1,704 | 1,626 | 1,790 |
| Mock Trial | 1,072 | 1,547 | 1,126 | 1,624 | 1,182 | 1,706 | 1,241 | 1,791 |
| Math Team | 1,254 | 1,430 | 1,317 | 1,449 | 1,383 | 1,521 | 1,452 | 1,598 |
| Musical Director Spring Musical HS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| National Honor Society MS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| National Honor Society HS | 1,405 | 1,546 | 1,475 | 1,623 | 1,549 | 1,704 | 1,626 | 1,790 |
| Newspaper MS | 1,432 | 1,575 | 1,504 | 1,654 | 1,579 | 1,736 | 1,658 | 1,823 |
| Newspaper HS | 1,432 | 1,575 | 1,504 | 1,654 | 1,579 | 1,736 | 1,658 | 1,823 |
| Odyssey of the Mind | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Peer Mediation HS | 1,405 | 1,506 | 1,475 | 1,581 | 1,549 | 1,660 | 1,626 | 1,743 |
| Peer Mediation MS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Pep Club HS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Recycling Club 3-6 | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| SADD | 1,700 | 1,870 | 1,785 | 1,964 | 1,874 | 2,062 | 1,968 | 2,165 |
| Science Olympiad | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Select Chorus--MS | 1,203 | 1,323 | 1,263 | 1,389 | 1,326 | 1,459 | 1,393 | 1,532 |
| Select Chorus HS | 1,234 | 1,357 | 1,296 | 1,425 | 1,360 | 1,496 | 1,429 | 1,571 |
| Senior Class Advisor | 1,244 | 1,368 | 1,306 | 1,436 | 1,372 | 1,508 | 1,440 | 1,584 |
| Snowboarding/Ski Club | 1,062 | 1,168 | 1,115 | 1,226 | 1,171 | 1,288 | 1,229 | 1,352 |
| Sophomore Class Advisor | 843 | 927 | 885 | 973 | 929 | 1,022 | 976 | 1,073 |
| Student Accounts Treasurer HS | 1,330 | 1,463 | 1,397 | 1,536 | 1,466 | 1,613 | 1,540 | 1,694 |
| Student Accounts Treasurer MS | 1,168 | 1,285 | 1,226 | 1,349 | 1,288 | 1,417 | 1,352 | 1,488 |
| Student Council HS | 1,432 | 1,575 | 1,504 | 1,654 | 1,579 | 1,736 | 1,658 | 1,823 |
| Student Council MS | 1,432 | 1,575 | 1,504 | 1,654 | 1,579 | 1,736 | 1,658 | 1,823 |
| Tech Crew Advisor | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Technology Liaison  (2) | 2,163 | 2,379 | 2,271 | 2,498 | 2,385 | 2,623 | 2,504 | 2,754 |
| Video Club HS | 1,094 | 1,203 | 1,149 | 1,263 | 1,206 | 1,326 | 1,266 | 1,393 |
| Yearbook Elementary | 955 | 1,051 | 1,003 | 1,104 | 1,053 | 1,159 | 1,106 | 1,217 |
| Yearbook--Editorial HS | 2,122 | 2,334 | 2,228 | 2,451 | 2,340 | 2,573 | 2,456 | 2,702 |
| Yearbook--Financial HS | 2,122 | 2,334 | 2,228 | 2,451 | 2,340 | 2,573 | 2,456 | 2,702 |
| Yearbook MS | 1,873 | 2,060 | 1,967 | 2,163 | 2,065 | 2,271 | 2,168 | 2,385 |
| Youth in Government (2) | 1,507 | 1,658 | 1,582 | 1,741 | 1,661 | 1,828 | 1,745 | 1,919 |

# JAMES I. O'NEILL HIGH SCHOOL
# MEMORANDUM

TO:        MR. PIERCE

FROM:      LOUIS TROMBETTA

DATE:      OCTOBER 20, 2006

RE:        GRIEVANCES


    According to page 2 Article 3 clause D of the Contractual Agreement between the Board of Education of Highland Falls-Fort Montgomery and the Teachers Association, "All grievances will be initiated and processed by the THTA." Based on this clause I am returning to you, your concerns and advising that you contact your union officially in order to process any concerns in the correct contractual manner.

    Please feel free to contact me if you need any additional guidance.


PC:  Mr. Johndrow
     Dr. Arbolino

**EXHIBIT I**

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:     MR. JAMES PIERCE

FROM:    MR. LOUIS TROMBETTA

DATE:    JANUARY 18, 2007

RE:  FOLLOW-UP TO OUR MEETING HELD ON 1/17/07


On Wednesday, January 17, 2007, we had a meeting in my office to discuss the issue of student card playing in the In-School Suspension room. You were upset because a teacher had complained to Mr. Johndrow that she had witnessed the card playing. It is my understanding that upon hearing of Ms. Gardner's allegations you confronted her in a classroom occupied by students. Confronting a teacher for an explanation in front of students is unacceptable. If the need arises for you to speak with another colleague to clarify a professional issue it is to be done in a more confidential setting where students or other staff could not hear the discussion.

Additionally, the playing of cards in the In-School Suspension room is not to be allowed.

If you have any questions, please feel free to contact me.


Copy:    Mr. Michael Johndrow
          Dr. Philip Arbolino

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:        MR. JAMES PIERCE

FROM:    MR. LOUIS TROMBETTA

DATE:    JANUARY 18, 2007

RE:        USE OF A CAMERA DURING SCHOOL HOURS

On Thursday, January 18, 2007, a meeting was held in my office. One of the topics that were discussed was the use of a camera during school hours. You admitted to taking pictures of the re-modeled cafeteria "to show my son" the area that "my new room" is located near.

Additionally it was established that teachers and or students could have been incorporated in those pictures. You did not receive permission from the administration to take pictures of the cafeteria facilities nor did you get permission from any individual that might have been found in the pictures.

In the future you are directed not to take personal pictures inside the building or on school property without first obtaining permission from the people involved and the administration.

If you have any question, please feel free to contact me.

Copy:    Mr. Michael Johndrow
          Dr. Philip Arbolino

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:        MR. JAMES PIERCE

FROM:      MR. LOUIS TROMBETTA

DATE:      FEBRUARY 22, 2007

RE:        IN-SCHOOL SUSPENSION

The In-School Suspension room is used for numerous purposes in the High School. One such purpose is to house students that have been removed from classes.

In the future you are directed to admit any student sent to In-School Suspension by the Main Office. Failure to do so will be considered insubordination.

Copy:      M. Johndrow
           Dr. Arbolino
           M. Mallon

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:            MR. PIERCE, MR. MALLON, MR. JOHNDROW

FROM:          MR. TROMBETTA

DATE:          MARCH 19, 2007

RE:            COUNSELING MEMO

On Monday, March 19, 2007 a meeting was held between Mr. Johndrow, Mr. Mallon, Mr. Pierce and myself. Three issues were discussed.  The first issue involved a complaint from two teachers Mrs. Roffman and Mrs. Campanella. According to the two teachers on Wednesday, March 14 at approximately 10:00 am they went to the in-school detention room (Mr. Pierce 06-07 classroom assignment) to give Mr. Pierce assigned work for their students that had been assigned in-school detention.  When they approached Mr. Pierce with the assignments, Mr. Pierce verbally chastised the teachers, noting the time that the work was being brought to the ISS room.  This verbal chastising took place in front of students. When asked for a response to this version of the incident, Mr. Pierce answered and I quote " I do not recall the incident or even know the teachers that you are talking about."

The second and third issue centered on Mr. Pierce's absence from mandated teacher meetings and conferences. On Monday, March 12, Mr. Pierce was not in attendance for the March Faculty Meeting.  On Wednesday, March 15th Mr. Pierce was not in attendance for Parent/Teacher conferences in the afternoon 12 to 2:30 and at night from 6 to 8:00pm. For both occasions he never asked or received permission to be absent.  When Mr. Pierce was asked about his absence he again responded " I do not recall."

Mr. Johndrow stated to Mr. Pierce that he is to attend all mandated teacher meetings or he will be considered insubordinate. Mr. Johndrow also stated that Mr. Pierce must receive permission from an administrator if for any reason a situation arises that he cannot attend a mandatory teacher meeting or conference. Additionally Mr. Johndrow directed Mr. Pierce not to approach the two teachers that had complained to the administrator concerning Mr. Pierce's inappropriate and unprofessional actions. Again if Mr. Pierce confronts the two teachers it would be considered insubordination. Mr. Pierce felt this should be no problem since again and I quote "could not pick the teachers out of a police line up."


Copy: Dr. Arbolino

# HIGHLAND FALLS-FORT MONTGOMERY

## CENTRAL SCHOOL DISTRICT

Post Office Box 287, Highland Falls, New York 10928

TO:       Mr. Pierce

FROM:     Dr. Arbolino, Superintendent

RE:       Charge of ½ Sick Day

DATE:     03/23/07

As per Mr. Trombetta's Memo of 03/19/07 to you, where he stated that you were absent without permission for Parent/Teacher Conferences on 03/15/07 at both the afternoon session from 12:00 to 2:30 P.M. and at the evening session from 6:00-8:00 P.M., you have been charged for ½ of a Sick Day, as per your available days by contract. Furthermore, should you continue to miss professional obligations without permission, you will be charged for Sick Days in a similar fashion.

cc: Mr. Trombetta
    Mr. Johndrow
    Mr. Mallon
    Mrs. DiBlasi



# HIGHLAND FALLS-FORT MONTGOMERY
## CENTRAL SCHOOL DISTRICT

DATE:      April 3, 2007

TO:        James Pierce

FROM:      Joanne DiBlasi

RE:        Attendance

Attached please find a copy of your attendance this far.  Please be aware that as of April 3rd you have 2.5 sick days and 0 personal days left for the remainder of this school year.  After you use these days you will be charged as leave without pay.

If you have any questions please call me.


cc:    Moira Liardi
       Pam Deans
       Lou Trombetta

HIGHLAND FALLS CENTRAL SCHOOL DIST
EMPLOYEE ABSENCES - BY NAME
PRINTED: 04-03-2007

SPECIFIC EMPLOYEES

| ABSENCE DATE | REASON DESCRIPTION | DAYS | SUB NAME | COMMENT |
|---|---|---|---|---|
| PIERCE, JAMES G | | | | |
| 09/05/06 | SICK | 1.000 | | |
| 09/19/06 | SICK | 1.000 | | |
| 10/03/06 | BEREAVEMENT | 1.000 | | |
| 10/04/06 | BEREAVEMENT | 1.000 | | |
| 10/05/06 | BEREAVEMENT | 1.000 | | |
| 10/11/06 | SICK | 1.000 | | |
| 10/26/06 | PERSONAL | 1.000 | | |
| 10/31/06 | PERSONAL | 1.000 | | |
| 11/01/06 | PERSONAL | 1.000 | | |
| 11/09/06 | PERSONAL | 0.500 | | |
| 11/13/06 | SICK | 1.000 | | |
| 11/20/06 | CONFERENCE | 1.000 | TRITTO JR | |
| 11/21/06 | SICK | 1.000 | | |
| 12/01/06 | SICK | 0.500 | | |
| 12/11/06 | SICK | 1.000 | | |
| 12/12/06 | SICK | 1.000 | | |
| 12/20/06 | SICK | 1.000 | | |
| 01/05/07 | SICK | 1.000 | | |
| 01/19/07 | SICK | 1.000 | | |
| 01/24/07 | SICK | 1.000 | | |
| 01/29/07 | SICK | 1.000 | CROWE | |
| 02/07/07 | SICK | 1.000 | | |
| 02/09/07 | SICK | 1.000 | | |
| 02/21/07 | SICK | 1.000 | | |
| 02/27/07 | SICK | 1.000 | | |
| 03/08/07 | SICK | 1.000 | | |
| 03/09/07 | SICK | 0.500 | | |
| 03/15/07 | SICK | 1.000 | | |
| 03/22/07 | SICK | 0.500 | | |
| 03/23/07 | SICK | 1.000 | | |
| 03/27/07 | SICK | 1.000 | | |
| 03/28/07 | SICK | 1.000 | | |
| 03/29/07 | SICK | 1.000 | | |
| 03/30/07 | SICK | 1.000 | | |

| Code | Reason | Days | | Avail |
|---|---|---|---|---|
| 1 | SICK | 25.500 | AVAIL | 2.500 |
| 2 | FAMILY SICK | 0.000 | AVAIL | *.*** |
| 3 | WORKERS' COMP CHARGEABLE | 0.000 | AVAIL | *.*** |
| 4 | PERSONAL | 3.000 | AVAIL | 0.000 |
| 5 | BEREAVEMENT | 3.000 | AVAIL | 0.000 |
| 6 | CONFERENCE | 1.000 | AVAIL | *.*** |
| 10 | SICK BANK DONATION | 0.000 | AVAIL | *.*** |
| 14 | HOLIDAY | 0.000 | AVAIL | 2.000 |

CUMULATIVE TOTAL    32.500



# HIGHLAND FALLS-FORT MONTGOMERY
## CENTRAL SCHOOL DISTRICT

DATE:        April 25, 2007

TO:          James Pierce

FROM:        Joanne DiBlasi

RE:          Attendance

Attached please find a copy of your attendance this far.  Please be aware that as of April 25th you have 0 sick days and 0 personal days left for the remainder of this school year.  Any further absences will be charged as leave with no pay

If you have any questions please call me.

cc:    Moira Liardi
       Pam Deans
       Lou Trombetta

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:       MR. JAMES PIERCE

FROM:     MR. LOUIS TROMBETTA

DATE:     MAY 1, 2007

RE:       LEAVING SCHOOL WITHOUT NOTIFICATION

On April 30th at approximately 11:20 AM you were seen by numerous persons leaving the James I. O'Neill High School. Upon investigation we could not locate you for the rest of the school day. Please be advised that prior to leaving the school building you should report to the main office and communicate with the administration of your intention to leave. Such communication will ensure for proper coverage of your assigned duties and guarantee the safety of the students that have been assigned to you.

Copy:    Michael Johndrow
         Michael Mallon
         Dr. Arbolino

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:        MR. JAMES PIERCE

FROM:    MR. LOUIS TROMBETTA

DATE:    MAY 7, 2007

RE:        Photograph

     Please see me concerning this photograph of you that is circulating the internet.

Copy:  Mike Johndrow
       Dr. Arbolino
       Mike Mallon

To play video messages sent to email, QuickTim
Visit www.apple.com/quicktime/download to down
your existing QuickTime® Player.  Note: During
process when asked to choose an installation t
Custom), select Minimum for faster download.



**EXHIBIT J**

# HIGHLAND FALLS-FORT MONTGOMERY

## CENTRAL SCHOOL DISTRICT

Post Office Box 287, Highland Falls, New York 10928

June 21, 2007

Mr. James Pierce
5 Ireland Avenue,
Wappingers Falls, New York 12590

Dear Mr. Pierce:

This letter is to give you official notification that you have been transferred from James I. O'Neill High School to the Highland Falls Middle School in your position as Special Education Teacher for Resource Room/Inclusion students in Grades 5-8 for the 2007-2008 School Year. More specific duties and responsibilities for this assignment will be forthcoming prior to the start of the 2007-2008 School Year. This transfer is effective immediately.

Thank you for your attention to this matter.

Sincerely,

Philip B. Arbolino, Ed.D.
Superintendent of Schools

cc: Mr. Trombetta
    Mrs. Connors

# HIGHLAND FALLS-FORT MONTGOMERY

## CENTRAL SCHOOL DISTRICT

Post Office Box 287, Highland Falls, New York 10928

July 3, 2007

Mr. James Pierce
5 Ireland Avenue
Wappingers Falls, New York 12590

Dear Mr. Pierce:

At its Reorganization Meeting last night on July 2, 2007, the Board of Education approved a Contingency Budget for the 2007-2008 School Year comprised of specific budget cuts of approximately $789,000. Due to these cuts, as well as related budgetary issues, you have been reassigned back to James I. O'Neill High School as a Special Education inclusion/resource teacher, Grades 9-12. This reassignment is effective immediately.

Thank you for your attention to this matter.

Sincerely,

Philip B. Arbolino, Ed.D.
Superintendent of Schools

**EXHIBIT K**

HIGHLAND FALLS CENTRAL SCHOOL DIST
EMPLOYEE ABSENCES - BY NAME
PRINTED:03-20-2008

SPECIFIC EMPLOYEES

*(handwritten: Pierce Attendance 01/08/54)*

| ABSENCE DATE | REASON DESCRIPTION | DAYS | SUB NAME | COMMENT |
|---|---|---|---|---|
| PIERCE, JAMES G | | | | |
| 09/10/07 | SICK | 0.000 | | |
| 09/19/07 | SICK | 1.000 | YOPP | |
| 09/26/07 | SICK | 1.000 | SWEENEY | |
| 09/27/07 | SICK | 1.000 | | |
| 10/15/07 | SICK | 1.000 | | |
| 10/17/07 | PERSONAL | 1.000 | | |
| 10/25/07 | SICK | 1.000 | NELSON | |
| 10/26/07 | SICK | 1.000 | | |
| 11/07/07 | SICK | 1.000 | | |
| 11/08/07 | SICK | 1.000 | LEWIS | |
| 11/13/07 | SICK | 1.000 | | |
| 11/14/07 | SICK | 1.000 | | |
| 11/15/07 | SICK | 1.000 | | |
| 11/16/07 | SICK | 1.000 | | |
| 11/21/07 | PERSONAL | 1.000 | | |
| 11/25/07 | PERSONAL | 1.000 | | |
| 11/30/07 | PERSONAL | 1.000 | | |
| 12/11/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 12/18/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 12/19/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 12/20/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 12/21/07 | LEAVE WITHOUT PAY | 1.000 | WETZEL | |
| 01/03/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 01/04/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 01/07/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 01/08/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 01/09/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 01/10/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 01/11/08 | LEAVE WITHOUT PAY | 0.500 | | |
| 01/16/08 | LEAVE WITHOUT PAY | 0.500 | | |
| 01/29/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 02/07/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 02/20/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 02/28/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 02/29/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 03/07/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 03/12/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 03/17/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 03/18/08 | LEAVE WITHOUT PAY | 1.000 | | |
| 03/19/08 | LEAVE WITHOUT PAY | 1.000 | | |

|  | | | | |
|---|---|---|---|---|
| 1 | SICK | 13.000 | AVAIL | 0.000 |
| 2 | FAMILY SICK | 0.000 | AVAIL | *.*** |
| 3 | WORKERS' COMP CHARGEABLE | 0.000 | AVAIL | *.*** |
| 4 | PERSONAL | 3.000 | AVAIL | 0.000 |
| 10 | SICK BANK DONATION | 0.000 | AVAIL | *.*** |
| 13 | LEAVE WITHOUT PAY | 22.000 | AVAIL | *.*** |
| 14 | HOLIDAY | 0.000 | AVAIL | 2.000 |

```
PAGE 2    EMPLOYEE ABSENCE    PRINTED:032008
SPECIFIC EMPLOYEES
----------------------------------------------------------------------
ABSENCE    REASON                      SUB
DATE       DESCRIPTION          DAYS   NAME          COMMENT
----------------------------------------------------------------------

                        CUMULATIVE TOTAL  38.000
```

*Pierce Attendance 06/07 SY*

```
HIGHLAND FALLS CENTRAL SCHOOL DIST
EMPLOYEE ABSENCES - BY NAME
PRINTED: 03-20-2008
```

SPECIFIC EMPLOYEES

| ABSENCE DATE | REASON DESCRIPTION | DAYS | SUB NAME | COMMENT |
|---|---|---|---|---|
| **PIERCE, JAMES G** | | | | |
| 09/05/06 | SICK | 1.000 | | |
| 09/19/06 | SICK | 1.000 | | |
| 10/03/06 | SICK | 1.000 | | |
| 10/04/06 | BEREAVEMENT | 1.000 | | |
| 10/05/06 | BEREAVEMENT | 1.000 | | |
| 10/06/06 | BEREAVEMENT | 1.000 | | |
| 10/11/06 | SICK | 1.000 | | |
| 10/26/06 | PERSONAL | 1.000 | | |
| 10/31/06 | PERSONAL | 1.000 | | |
| 11/01/06 | PERSONAL | 1.000 | | |
| 11/09/06 | SICK | 1.000 | | |
| 11/13/06 | SICK | 0.500 | | |
| 11/20/06 | SICK | 1.000 | | |
| 11/21/06 | CONFERENCE | 1.000 | | |
| 12/01/06 | SICK | 1.000 | | |
| 12/11/06 | SICK | 0.500 | | |
| 12/12/06 | SICK | 1.000 | | |
| 12/20/06 | SICK | 1.000 | | |
| 01/05/07 | SICK | 1.000 | TRITTO JR | |
| 01/15/07 | SICK | 1.000 | | |
| 01/24/07 | SICK | 1.000 | | |
| 01/29/07 | SICK | 1.000 | | |
| 02/07/07 | SICK | 1.000 | | |
| 02/09/07 | SICK | 1.000 | | |
| 02/21/07 | SICK | 1.000 | | |
| 02/27/07 | SICK | 1.000 | | |
| 03/08/07 | SICK | 1.000 | | |
| 03/09/07 | SICK | 1.000 | | |
| 03/15/07 | SICK | 0.500 | | |
| 03/22/07 | SICK | 1.000 | | |
| 03/23/07 | SICK | 1.000 | | |
| 03/27/07 | SICK | 1.000 | | |
| 03/28/07 | SICK | 1.000 | | |
| 03/29/07 | SICK | 1.000 | CROWE | |
| 03/30/07 | SICK | 1.000 | | |
| 04/16/07 | SICK | 1.000 | | |
| 04/17/07 | SICK | 1.000 | | |
| 04/25/07 | SICK | 0.500 | | |
| 04/30/07 | LEAVE WITHOUT PAY | 0.500 | | |
| 05/01/07 | LEAVE WITHOUT PAY | 1.500 | | |
| 05/02/07 | LEAVE WITHOUT PAY | 1.500 | | |
| 05/03/07 | LEAVE WITHOUT PAY | 0.500 | | |
| 05/09/07 | LEAVE WITHOUT PAY | 0.500 | | |
| 05/14/07 | LEAVE WITHOUT PAY | 0.500 | | |
| 05/21/07 | LEAVE WITHOUT PAY | 0.500 | | |
| 05/22/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 05/30/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 06/04/07 | LEAVE WITHOUT PAY | 1.000 | | |
| 06/05/07 | LEAVE WITHOUT PAY | 1.000 | | |

```
PAGE  2    EMPLOYEE ABSENCE     PRINTED:
SPECIFIC EMPLOYEES
```

| ABSENCE DATE | REASON DESCRIPTION | DAYS | SUB NAME | COMMENT |
|---|---|---|---|---|
| 06/21/07 | LEAVE WITHOUT PAY | 1.000 |  |  |
|  | 1  SICK | 28.000 | AVAIL | 0.000 |
|  | 2  FAMILY SICK | 0.000 | AVAIL | *.*** |
|  | 3  WORKERS' COMP CHARGEABLE | 0.000 | AVAIL | *.*** |
|  | 4  PERSONAL | 3.000 | AVAIL | 0.000 |
|  | 5  BEREAVEMENT | 3.000 | AVAIL | 0.000 |
|  | 6  CONFERENCE | 1.000 | AVAIL | 0.000 |
|  | 10 SICK BANK DONATION | 0.000 | AVAIL | *.*** |
|  | 13 LEAVE WITHOUT PAY | 9.000 | AVAIL | 0.000 |
|  | 14 HOLIDAY | 0.000 | AVAIL | 2.000 |
|  | CUMMULATIVE TOTAL | 44.000 |  |  |

# EXHIBIT L

*Cc: in teachers personal file*

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

**TO:**     MR. PIERCE

**FROM:**     MR. TROMBETTA

**DATE:**     December 3, 2007

**RE:**     SCHEDULE CHANGE

Starting December 4, 2007 you are to follow the teaching schedule below:

| Period | Course Name | Day | Room |
|---|---|---|---|
| Period 1 | Biology Inclusion | A B | 236 |
| Period 2 | Study Hall | A B | 326 |
| Period 5/6 | Resource Room | A | 270 |
| Period 6/7 | Biology (Mr.Pitts') Inclusion | B | 216 |
| Period 8/9 | Biology (Mr. Pitts') Inclusion | A B | 216 |
| Period 10 | Resource Room/504 | A B | 270 |
| Period 11 | Resource Room | A B | 270 |

Please note that this change was necessitated due to numerous concerns regarding your Mathematics 9 class. Specific concerns were:

1. Due to your high absentee rate the continuity of instruction was jeopardized.
2. Your refusal to accept academic support and seek professional support from the administration and teaching peers in regards to mathematics instruction.
3. The pace of curriculum delivery (too slow) and the need to prepare the class for the Algebra Regents or Mathematics RCT.

If you have any questions concerning this schedule please feel free to discuss this matter with me.

Cc:     Mr. Canzoneri
        Mr. Fraioli
        Mrs. Kolewe

②

MEMORANDUM

TO:        Mr. Louis Trombetta

FROM:      Mrs. Robin Haberman

DATE:      January 22, 2008

RE:        Mr. Jim Pierce


While making morning rounds during the 8:00 a.m. exams, I passed Room

270 where Mr. Pierce was hunched over his desk sleeping, during his

proctoring assignment.  I opened the door to inquire about the student and

the exam, at which time, Mr. Pierce perked up.  It should be noted that there

was another proctor in the room during this exam.

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

TO:            Mr. Pierce

FROM:        Mr. Trombetta

DATE:        January 23, 2008

RE:            Behavior during proctoring assignment

Following the discussion that I had with you and Mr. Mallon on Wednesday January 23, 2008 concerning your behavior during two proctoring assignments I received the attached memorandums. The two memorandums reinforce my concern over your ability to professionally proctor midterm and New York State regent's examinations. My expectations are as follows:

1. When proctoring an examination you must be attentive to the needs of your students and teachers.
2. You must act in a professional manner refraining from the use of profanities or any high decibel verbal comments.
3. You are to remain in your assignment until you are relieved from your responsibilities or the examination is finished.

If you have any questions regarding this memorandum please feel free to discuss this with me.

Cc: Mr. Hillburgh
    Mrs. Haberman
    Mr. Mallon

③

# Memorandum

**To:**   Mr. Louis Trombetta, Principal

**From:**  Gary Ciesla  *Gary F Ciesla*

**Date:**  1/23/2008

**Re:**   Library Incident

At approximately 9:15 A.M. today I entered the library and observed that Jim Pierce was speaking with student Bruce Emerizy during Bruce's US History RCT exam. From my vantage point it appeared that Mr. Pierce was offering an explanation of some kind to Bruce, while pointing at a test question, such as a map or a chart. I approached the table and told Mr. Pierce that he could not offer any help to Bruce. Pierce indicated that Bruce was only asking whether he could write his answers in pencil or if he had to use a pen. Mr. Pierce then returned to his seat. A minute or two later he pointed at Bruce and commented in a loud, disruptive voice that was audible to other students taking the test: "Who is this kid's teacher? This kid doesn't know (profanity) about US History!" I walked over to Pierce and said, "If you have a problem, we'll talk about it outside in the hallway." Pierce replied, "I don't want to talk about it, and you can't stop me from talking. I'll say whatever I want. It's clear I'm irrelevant around here. Following this, he put a listening earbud into his ear, and held an electronic device (such as an i-pod or a cellphone) of some kind in his right hand. At this point Robin Haberman walked into the library and asked me if there was a problem. In order to speak to her privately I walked with her to a side room. As I did so I observed Jim Pierce walking out of the library with his belongings.

1

# JAMES I. O'NEILL HIGH SCHOOL MEMORANDUM

**TO:**    Mr. Pierce

**FROM:**    Louis Trombetta

**DATE:**    January 30, 2008

**RE:**    Discussing Personal Issues with Students

On January 30th at approximately 10:00 AM a meeting was held in my office. In attendance was yourself, Mrs. Haberman (the assistant principal) and Mr. Coyne (high school union representative). During the meeting you were directed by me not to discuss any personal employment matters with students during or in school. The specific example that I used was your solicitation of "character references" for an anticipated employment matter. My expectation is that you approach your job in a professional manner limiting your interaction with students to the educational realm.

Cc: Mr. Hilburgh
    Mrs. Haberman
    Mr. Mallon
    Personnel



**EXHIBIT M**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
------------------------------------------------------------------X     Index No. 3990/2007
JAMES G. PIERCE,

      Plaintiff,     **ORDER WITH**
**NOTICE OF ENTRY**

 - against -

HIGHLAND FALLS-FORT MONTGOMERY CENTRAL
SCHOOL DISTRICT,

      Defendant.
------------------------------------------------------------------X

**COUNSELORS:**

  **PLEASE TAKE NOTICE,** that the within is a true copy of an Order signed by the

Honorable Justice William J. Giacomo, J.S.C., duly entered in the Office of the Clerk of the

within named Court on January 16, 2008

Date: Hawthorne, New York
   January 28, 2008

     TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

    By: _Veronica Reed_
       Veronica L. Reed
       Mid-Westchester Executive Park
       Seven Skyline Drive
       Hawthorne, New York 10532
       (914) 347-2600
       *Attorneys for Defendant*
       *Highland Falls-Fort Montgomery*
       *Central School District*



TO: Helen G. Ullrich, Esq.
   Bergstein & Ullrich, LLP
   15 Railroad Avenue
   Chester, New York 10918
   (845) 469-1277
   FAX: (845) 469-5904
   *Attorneys for Plaintiff*
   *James G. Pierce*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

P R E S E N T :
HON. WILLIAM J. GIACOMO,
SUPREME COURT JUSTICE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JAMES G. PIERCE,

> To commence the statutory time
> period for appeals as of right
> (CPLR 5513 [a]), you are
> advised to serve a copy of this
> order, with notice of entry,
> upon all parties.

                              Plaintiff,

          -against-

HIGHLAND FALLS-FORT MONTGOMERY          Index No. 3990/2007
CENTRAL SCHOOL DISTRICT,                **DECISION & ORDER**

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    The following papers numbered 1 to 7 were read on plaintiff's motion to file a late

Notice of Claim:

        Notice of Motion, Affirmation of Helen G. Ullrich, Esq.,Notice of Claim....1-3
        Affirmation in Opposition of Daniel G. Ecker, Exhibits A-J........................4-5
        Memorandum of Law in Opposition to Motion.........................................6
        Reply Affirmation of Stephen Bergstein, Exhibit 1....................................7

    Based on the foregoing papers the motion is DENIED.


<u>Background</u>

    The plaintiff is employed by the defendant school District, Highland Falls-fort

Montgomery Central School District (hereinafter "School District") as a teacher in its high

1

school[1]. He was hired as a special education teacher in 2003 and secured his tenure in May, 2005, effective for the 2005-2006 school year. On or about July 21, 2005, plaintiff was arrested and charged with a violation of VTL §1192(4), driving while ability impaired by drugs. On May 2, 2006, plaintiff pled guilty to a reduced charge pursuant to VTL §5111(1)(a), aggravated unlicensed operation of a motor vehicle in the third degree, an unclassified misdemeanor.

Subsequently, on June 2, 2006 plaintiff was advised that pursuant to Education Law §913 the Board of Education adopted a resolution directing plaintiff to submit to medical examinations first, which he did on June 20 and 26, 2006. By examination report dated June 26, 2006, but forwarded under cover letter dated August 10, 2006, it was revealed to the Superintendent of Schools that plaintiff was taking hydrocodon, an opiate that plaintiff contends he takes for pain management relating to bilateral hip replacement that he had in 2001 and 2003, and Valium.

Nonetheless, by memo dated July 27, 2006[2] plaintiff was advised that his teacher assignment for the 2006-2007 school year would be as teacher in-charge of the in-school suspension program[3]. Thereafter, the Superintendent of Schools met with plaintiff on

---

[1]There is no indication that plaintiff is no longer employed by the defendant.

[2]It is unclear from the record, whether the contents of the medical report were known prior to the preparation of this memo, but the date of the transmittal letter, August 10, 2006, indicates a copy of the report was not received before the July 27, 2006 memo was drafted and sent.

[3]Prior to this assignment, it is alleged that plaintiff was a special education teacher and chair of the special education department at the high school. Plaintiff's attorney claims this was an "adverse employment action". It seems to the Court that plaintiff was assigned to the "SAVE" room. In 2000, the New York State Legislature passed the Safe Schools Against Violence in Education Act (SAVE), Article 55, Regulations By Boards of Education

September 1, 2006, and followed with a memo dated September 5, 2006 directing plaintiff to meet with the principal of the high school and implement a "Professional Improvement Plan" which was to include management strategies, behavioral expectations and academic goals and objectives involving his new position.

By letters dated October 19, 2006, plaintiff claimed that his new assignment violated the collective bargaining agreement (the "CBA") between the Board of Education and the Town of Highland Teachers' Association[4]. Plaintiff was directed to contact his union representative to process his alleged grievances. The record indicates plaintiff took no action. Thereafter, between January and May, 2007 plaintiff met with the principal to address no less than eight matters pertaining to disciplinary issues and absences.

In March, 2007, on the advice of counsel, plaintiff examined his personnel file and "discovered" that defendant "perceived" him as being addicted to pain killers and "instituted a policy of monitoring him while removing him from his teaching duties".

In April, 2007, plaintiff filed an administrative complaint with the EEOC alleging discrimination based on a perceived disability on violation of Executive Law § 296 and the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.* (hereinafter the "ADA"). Shortly

---

of Conduct on School District Property, §2801, 2801-a, 2802, 2814, which strengthened the ability of teachers and administrators to remove disruptive students from the classroom and called for a mandatory SAVE room for such students, as well as extensive new incident reporting requirements.

[4]More specifically, plaintiff claims that this reassignment constituted an involuntary transfer and reassignment. The Court notes that CBA, which is attached to the opposition papers, does not prohibit transfers or reassignments, but institutes a procedure and time constraints for effectuating same. The Court also notes that the terms "transfer" and "reassignment" are not defined in the CBA and therefore is unable to determine whether an inter-building reassignment qualifies.

thereafter, plaintiff commenced this proceeding in May, 2007 seeking leave to serve a late notice of claim pursuant to Education Law § 3813(1) for alleged discrimination under Executive Law § 296 and in violation of the ADA based on a perceived mental illness or drug addiction[5].

### Discussion

As a condition precedent to an action against a school district, Education Law §3813 requires that a notice of claim be presented to the governing body of the school district within three months from the accrual of the claim.  Education Law § 3813(1). The burden of establishing that Education Law § 3813(1) has been complied with is upon the injured party.  Matter of Hurley v. Avon Cent. School Dist., 187 A.D.2d 982, 591 N.Y.S.2d 643(4th Dept., 1992).

A claim accrues when "it matures and damages become ascertainable ".  Pope v. Hempstead Union Free School Dist. Bd. of Educ.,  194 A.D.2d 654, 655, 598 N.Y.S.2d 814, 816 (2nd Dept., 1993);  Dembovich v. Liberty Cent. School Dist. Bd. of Educ.,  296 A.D.2d 794, 796, 745 N.Y.S.2d 342,343 - 344 (3rd Dept., 2002); citing, Matter of Chanecka v. Board of Educ. of Broome-Tioga BOCES, 243 A.D.2d 1011, 1012, 663 N.Y.S.2d 681 (3rd Dept., 1997), appeal dismissed, 91 N.Y.2d 920, 669 N.Y.S.2d 262, 692 N.E.2d 131, lv.

---

[5]In the event that this Court grants leave to file a late notice of claim, plaintiff would be required to purchase new index number to commence new action.  See, Harris v. Niagara Falls Bd. of Educ., 16 A.D.3d 1165, 792 N.Y.S.2d 746 (4th Dept., 2005); Silvernail v. Enlarged City School Dist. of Middletown, 40 A.D.3d 1004, 1005, 836 N.Y.S.2d 286, 287 (2nd Dept., 2007)[An action commenced prior to serving a notice of claim is procedurally defective and must be dismissed.]

4

*denied,* 92 N.Y.2d 802, 677 N.Y.S.2d 72, 699 N.E.2d 432; and <u>Augat v. State of New York,</u> 244 A.D.2d 835, 836, 666 N.Y.S.2d 249 (3rd Dept., 1997), *lv. denied* 91 N.Y.2d 814, 676 N.Y.S.2d 127, 698 N.E.2d 956. "The key to ascertaining a claim's accrual date is to look at the crux of the challenge being asserted ...'". <u>Id.</u>, *citing,* <u>Matter of Board of Educ. of Union-Endicott Cent. School Dist. v. New York State Pub. Empl. Relations Bd.,</u> 250 A.D.2d 82, 85, 681 N.Y.S.2d 391 (3rd Dept., 1998), *lv. denied,* 93 N.Y.2d 805, 689 N.Y.S.2d 429, 711 N.E.2d 643 (citation omitted in original).

Here, plaintiff's attorney claims that it was an "adverse employment action" when defendant transferred plaintiff from his position as a special education teacher and department chair to the position of in-school suspension room. Plaintiff's lawyer claims this occurred in September, 2006, but in fact plaintiff was advised of that reassignment two months earlier in July, 2006. Therefore, in this case, the claim accrued in July, 2006 and is clearly untimely.

Education Law § 3813 permits this Court to extend the time to serve a notice of claim. Education Law § 3813(2-a). The Court should consider three (3) factor in determining whether to grant leave to serve a late notice of claim pursuant to Education Law § 3813:

> "(1) whether the movant has demonstrated a reasonable excuse for failing to serve a timely notice of claim, (2) whether the school district acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a reasonable time thereafter, and (3) whether the delay substantially prejudiced the school district in maintaining its defense on the merits". <u>Surdo v. Levittown Public School Dist.,</u> 41 A.D.3d 486, 487, 837 N.Y.S.2d 315, 317 (2nd Dept., 2007); <u>Scolo v. Central Islip Union Free School Dist.,</u> 40 A.D.3d 1104, 1105, 838 N.Y.S.2d 577, 579 (2nd Dept., 2007).

5

Upon consideration of these factors, the Court denies the plaintiff leave to serve a late notice of claim upon the School District.

The proffered excuse for the delay, that plaintiff did not know the true reason for this reassignment, his "perceived" drug addiction/mental illness, until he had the opportunity to examine his personnel file in March, 2007, is implausable[6]. Plaintiff was directed to submit to medical exams where his alleged drug use was clearly at issue. Not only was he reassigned, but was also directed to implement a "Professional Improvement Plan" and offered a supportive recourse know as the "Employees Assistance Program". He had a meeting with his building principal to discuss this reassignment as well as the "Professional Improvement Plan" in September, 2006. He complained and threatened to file a grievance regarding his reassignment. He was told to report for yet another medical exam in October, 2006 at which time he provided evidence that the pain killers he was taking were by prescribed by his orthopedist. Despite all the foregoing, it was not until he saw his personnel file that he claims he first realized his reassignment was related to a "perceived" drug problem. Such excuse is unsatisfactory.

In addition, the plaintiff failed to satisfy the other two factors, i.e. that the school district acquired actual knowledge of the essential facts constituting the claim within 90 days after the claim arose or a reasonable time thereafter, and that the delay did not substantially prejudice the school district in maintaining its defense on the merits.

In this regard plaintiff's assertion that the EEOC charge provided the defendant with

---

[6]Attached to the Notice of Motion is only an affirmation by the plaintiff's lawyer. Nonetheless the plaintiff also separately submits a proposed "Notice of Claim" that is executed and sworn to be the plaintiff before a Notary Public. The Court will deem this document an affidavit of merit for consideration on this motion.

actual knowledge is rejected. Even if the EEOC charge contained the necessary details, such charge was not received by defendant until mid to late April, 2007 well beyond the 90 day period. Furthermore, plaintiff's reliance on the case <u>Picciano v. Nassau County Civil Service Com'n.</u>, 290 A.D.2d 164, 736 N.Y.S.2d 55 (2nd Dept.,2001) is unavailing. In <u>Picciano v. Nassau County Civil Service Com'n.</u>, a prospective appointee was denied appointment to a position of county corrections officer when he was found to have color vision deficiency, brought action for order directing county civil service commission to appoint him to that position. The Appellate Division reversed a denial of the trial court to file a late notice of claim because the "defendants had actual knowledge of the facts underlying the plaintiff's claim, as their own employees engaged in the conduct which gave rise to the claim". <u>Id</u>. 290 A.D.2d at 174, 736 N.Y.S.2d at 63 (2nd Dept., 2001). The Court determined that the defendant was in possession of the medical tests at issue, i.e. the color vision examination, and the defendants have failed to demonstrate any prejudice in their ability to defend against the claim. In <u>Picciano</u>, a black and white issue of whether or not the plaintiff passed a color vision test was the issue. Such is not the case at bar.

In the instant action the question is not only whether or not plaintiff tested positive for drugs. The issue is whether or not the defendant "perceived" a drug addiction and violated plaintiff's rights based on this perception. As such, more than mere possession of the drug tests would be necessary for the defendants to have actual knowledge of the essential facts constituting the claim. A thorough investigation of events reaching back to at least May of 2006 could be necessary.

Hand in hand with the above, plaintiff has not met his burden in establishing that defendant will suffer no prejudice. Plaintiffs notion that since the defendant will have to

comply with the EEOC investigation "anyway", and since such investigation will be "identical" there will be no prejudice is not accurate.  The fact that these defendants may have to respond to a federal law inquiry does not negate the very purpose of Education Law §3813 which "is to give a school district prompt notice of claims 'so that investigation may be made before it is too late for investigation to be efficient'." Parochial Bus Systems, Inc. v. Board of Educ. of City of New York,  60 N.Y.2d 539, 547, 458 N.E.2d 1241, 1244, 470 N.Y.S.2d 564, 567 (1983), quoting, Board of Ed. of Enlarged Ogdensburg City School Dist. v. Wager Const. Corp., 37 N.Y.2d 283, 333 N.E.2d 353, 372 N.Y.S.2d 45 (1975).  The School District has not conducted a prompt investigation into its alleged discrimination, as there had been no claim of discrimination until April, 2007, therefore it would be prejudiced if it were compelled to prepare a defense to the claim at this late date.  See, Scolo v. Central Islip Union Free School Dist., 40 A.D.3d 1104, 1106, 838 N.Y.S.2d 577, 579 - 580 (2nd Dept., 2007).

On account of the foregoing the motion seeking to file a late Notice of Claim is denied.

This constitutes the decision and order of the court.

Dated:      Goshen, New York
            October 3 / , 2007

HON. WILLIAM J. GIACOMO
SUPREME COURT JUSTICE

8

Filed
Orange County Clerk
2008 JAN 16 A 9:31

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
             ) ss.:
COUNTY OF WESTCHESTER  )

   Elvira Porelli, being duly sworn, deposes and says:

   That deponent is not a party to the within action and is over 18 years of age.

   That on the 28th day of January 2008, deponent served the within **ORDER WITH NOTICE**

**OF ENTRY** upon the party(ies) listed below, by depositing same enclosed in a postpaid properly

addressed wrapper, in an official depository under the exclusive care and custody of United States

Post Office Department within the State of New York.

TO: Helen G. Ullrich, Esq.
   Bergstein & Ullrich, LLP
   15 Railroad Avenue
   Chester, New York 10918
   (845) 469-1277
   FAX: (845) 469-5904
   *Attorneys for Plaintiff*
   *James G. Pierce*

                   Elvira Porelli

Sworn to before me this
28th day of January, 2008

Notary Public

VERONICA LINNAE REED
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RE6129065
Qualified in Westchester County
Commission Expires June 20, 2009