UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES PIERCE,

                     Plaintiff,

HIGHLAND FALLS-FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT, PHILIP B.          08 Civ. 1948 (SCR)
ARBOLINO, former Superintendent of
Schools, and LOUIS TROMBETTA, High
School Principal, sued in their individual         ECF Case
capacities,

                    Defendants.
-------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT PURSUANT TO RULE 12(b)(6)**


STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiff

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF
MAY BE GRANTED

POINT I:      THE COMPLAINT ALLEGES A DISCRIMINATION
              CLAIM UNDER THE AMERICANS WITH DISABILITIES
              ACT AND THE REHABILITATION ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A. Defendants regarded plaintiff as suffering from a protected disability . . . . . . . . . . . 6

        B. Plaintiff suffered an adverse employment action when defendants
           transferred him to the In-School Suspension room . . . . . . . . . . . . . . . . . . . . . . . . 9

        C. Plaintiff is a "qualified individual" under the ADA . . . . . . . . . . . . . . . . . . . . . . . . 10

        POINT II:      THE COMPLAINT ALLEGES AN ACTIONABLE EQUAL
                       PROTECTION CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A. The Complaint alleges that defendants discriminated
           against plaintiff in violation of § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B. Defendants are not entitled to qualified immunity . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**Cases**

Back v. Hastings on Hudson, 365 F.3d 107 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . 10, 11

Capobianco v. City of New York, 422 F.3d 47 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Colwell v. Suffolk County Police Dep't, 158 F.3d 635 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . 6, 7

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . 4, 5

De La Cruz v. New York City Human Resources Admin., 82 F.3d 16 (2d Cir. 1996) . . . . . . . . 10

Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565 (3d Cir. 2002) . . . . . . . . . . . . . . . . . 8

Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 9

Garcia v. State University of New York, 280 F.3d 98 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . 11, 14

Hope v. Pelzer, 536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Jacques v. DiMarzio, Inc., 386 F.3d 192 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Johnson v. Newburgh Enlarged School District, 239 F.3d 246 (2d Cir. 2001) . . . . . . . . . . . . . 13

LaBounty v. Coughlin, 137 F.3d 68 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Liberty Mut. Ins. Co. v. N. Picco, 2008 U.S. Dist. LEXIS 4915 (S.D.N.Y. Jan. 16, 2008) . . . . . 4

Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Mandell v. County of Suffolk, 316 F.3d 368 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Mattice v. Mem'l Hosp. of S. Bend, 249 F.3d 682 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 7

McGriff v. Mun. Hous. Auth., 2007 U.S. Dist. LEXIS 80312 (S.D.N.Y. Oct. 10, 2007) . . . . . . . 3

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Richardson v. New York State Dep't of Corr. Servcs.</u>, 180 F.3d 426 (2d Cir. 1999) . . . . . . . . . . 9

<u>Rodriguez v. Board of Education</u>, 640 F.2d 362 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Taylor v. Phoenixville School District</u>, 184 F.3d 296 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 8

<u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Weinberger v. Wiesenfeld</u>, 420 U.S. 636 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Weinstock v. Columbia University</u>, 224 F.3d 33 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Zellner v. Summerlin</u>, 494 F.3d 344 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes and Regulations**

29 U.S.C. § 794(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

42 U.S.C. § 12112(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 C.F.R. § 1630.2(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 C.F.R. § 1630.2(i)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JAMES PIERCE,

                Plaintiff,

HIGHLAND FALLS-FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT, PHILIP B.          08 Civ. 1948 (SCR)
ARBOLINO, former Superintendent of
Schools, and LOUIS TROMBETTA, High
School Principal, sued in their individual        ECF Case
capacities,

                Defendants.
--------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in opposition to defendants' motion to dismiss the Complaint. Although defendants file this pre-answer motion under Rule 12(b)(6), they submit voluminous documentation in support of that motion. As outlined below, these exhibits are not permissible under Rule 12(b)(6). Under the correct standard, the Complaint states a claim upon which relief may be granted. This Court should deny the motion in its entirety.

## STATEMENT OF FACTS

Plaintiff James Pierce is a licensed teacher certified to teach Special Education and History at the secondary level. (Complaint ¶ 9). In September 2003, the School District hired plaintiff as a Special Education teacher at James I. O'Neill High School. He also chaired the Special Education department and directed school plays. Id. at ¶ 10. The District granted plaintiff tenure in May 2005. Id. at ¶ 11.

In April 2006, Board of Education member Ned Kopald sent a memorandum to Arbolino making reference to plaintiff's "alleged addiction." Id. at ¶ 14. At the end of the 2006 school year,

without any explanation, plaintiff was reassigned to the "In-School Suspension" room and told that he would not be directing the school play the following year. Id. at ¶ 15.

Also without explanation, plaintiff was removed from his position as Special Education teacher and department chair. Id. at ¶ 16.

In June 2006, plaintiff was directed to contact a physician retained by the District for a medical examination. Id. at ¶ 17. In his report to Superintendent of Schools Philip Arbolino, the physician noted that plaintiff was taking Hydrocodone 10, a painkiller for pain associated with plaintiff's bilateral hip replacements in 2001 and 2003. In addition, the physician noted that plaintiff was using Valium every other day for two months. The physician erroneously stated that plaintiff had no prescription for the Valium. Id. at ¶ 18.

In a September 2006 memorandum to the Principal, Louis Trombetta, Arbolino discussed steps to comply with the Board of Education's directive to carefully monitor plaintiff. Defendants did not discuss with plaintiff the District's concerns. Id. at ¶ 19. A month later, without explanation, plaintiff was again directed to contact the same physician for another examination. Id. at ¶ 20.

Plaintiff gave the District evidence that his orthopedist had prescribed painkillers in response to his ongoing chronic pain and that he was in counseling due to his divorce and death of his son. Id. at ¶ 21. Nevertheless, in an apparent effort to induce plaintiff to resign, the District refused to permit him to return to the classroom and offered no rational explanation for these adverse actions. Id. at ¶ 22.

Throughout the 2006-07 school year, plaintiff was assigned to the In-School Suspension room, where he taught no classes. Instead, plaintiff simply monitored the assignments and conduct of students who had been suspended. In prior years, this room had not been assigned to a licensed

2

teacher and, whenever plaintiff was absent, a teacher's aide substituted for him.  Id. at ¶ 23.

Throughout that school year, Trombetta micromanaged plaintiff's conduct and barraged him with

memoranda baselessly criticizing his behavior.  Id. at ¶ 24.

In September 2007, plaintiff returned to the classroom to teach Special Education Math.

He was again subjected to a barrage of baseless criticisms and removed from teaching a number of

classes.  Id. at ¶ 27.

The Complaint alleges that, through their writings and conduct, defendants regard

plaintiff as having a physical or mental impairment that substantially limits a major life function such

as working or cognitive ability, within the meaning of the Americans With Disabilities Act.  Id. at

¶ 28.  Moreover, defendants have made no effort to conduct a good faith discussion with plaintiff

about any concerns about his health and/or his teaching.  Id. at ¶ 29.

## ARGUMENT

### THE COMPLAINT STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Under Rule 12(b)(6), "a court is 'not to weigh the evidence that might be presented at a

trial but merely to determine whether the complaint itself is legally sufficient.'  Because the

complaint must allege facts which confer a cognizable right of action, '[t]he issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims.'"  McGriff v. Mun. Hous. Auth., 2007 U.S. Dist. LEXIS 80312, at *2-3 (S.D.N.Y. Oct. 10,

2007).

Under Rule 12(b)(6), the court must 'accept as true the factual allegations of the

complaint, and draw all inferences in favor of the pleader.'  Dismissal is appropriate where the

plaintiff cannot recover on the facts he has alleged.  When determining the sufficiency of plaintiff's

complaint for Rule 12(b)(6) purposes, this Court must limit its consideration to (1) the factual allegations in plaintiffs' . . . complaint, which must be accepted as true, (2) documents attached to the complaint as exhibits or incorporated in it by reference, (3) matters of which judicial notice may be taken, and (4) documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. The complaint includes any written instrument attached to it as an exhibit, see Federal Rule of Civil Procedure 10(c), materials incorporated in it by reference, and other documents that are 'integral' to the complaint even if they are not incorporated by reference. A document is integral to the complaint where the complaint 'relies heavily upon its terms and effect.'" Liberty Mut. Ins. Co. v. N. Picco & Sons Contr. Co., 2008 U.S. Dist. LEXIS 4915, at *8-10 (S.D.N.Y. Jan. 16, 2008) (citations omitted).

The Court of Appeals has clarified the above standard. "On a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

In other words, where the Complaint does not expressly incorporate any records, this Court may consider documents on a Rule 12(b)(6) motion if the plaintiff relied on them in drafting the Complaint. See, e.g., Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("we have held that when a plaintiff chooses not to attach to the complaint or incorporate by

4

reference a prospectus upon which it solely relies and which is integral to the complaint, the

defendant may produce the prospectus when attacking the complaint for its failure to state a claim,

because plaintiff should not so easily be allowed to escape the consequences of its own failure.

Similarly, when a district court decides a motion to dismiss a complaint alleging securities fraud, it

may review and consider public disclosure documents required by law to be and which actually have

been filed with the SEC, particularly where plaintiff has been put on notice by defendant's proffer

of these public documents").

Under this standard, this Court should disregard most of the records attached to

defendants' motion. Plaintiff does not predicate the Complaint on the records annexed to the motion

to dismiss. <u>Cortec Industries</u>, 949 F.2d at 47. In particular, Exhibits B through L consist of

memoranda, medical records and other materials from plaintiff's personnel file. Defendants offer

these documents out of context, and the Complaint alleges that defendants undertook these adverse

decisions in bad faith. The time to place these records in proper context is discovery, not in

reference to a Rule 12(b)(6) motion.

## POINT I

## THE COMPLAINT ALLEGES A DISCRIMINATION CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

"The ADA prohibits discrimination against a 'qualified individual with a disability

because of the disability' in the 'terms, conditions, and privileges of employment.' 42 U.S.C. §

12112(a). A plaintiff asserting a violation of the ADA must prove that: (1) the defendant is covered

by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the

meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with

or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). Under 29 U.S.C. § 794(d), the Rehabilitation Act adopts ADA standards for resolving employment discrimination claims. While defendants note that the School District is covered under the ADA and Rehabilitation Act, they claim that plaintiff cannot meet the other elements of a disability discrimination claim.

### A. Defendants regarded plaintiff as suffering from a protected disability

"To prevail under the 'regarded as' provision of the ADA, a plaintiff must show more than 'that the employer regarded that individual as somehow disabled; rather, the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA.' This Court follows 'a three-step process for determining whether a plaintiff has a disability' that is protected by the ADA. We consider: (1) 'whether the plaintiff suffered from a physical or mental impairment,' (2) whether 'the life activity' upon which the plaintiff relied . . . constitutes a major life activity under the ADA,' and (3) whether 'the plaintiff's impairment 'substantially limited' [the] major life activity identified.'" Jacques v. DiMarzio, Inc., 386 F.3d 192, 201 (2d Cir. 2004). "[W]hether an individual is 'regarded as' having a disability 'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.'" Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998).

Viewing the Complaint in the light most favorable to plaintiff, it sufficiently alleges that defendants regarded him as suffering from a cognizable disability. In April 2006, a Board of Education member told Arbolino about plaintiff's "alleged addiction." (Complaint ¶ 14). Defendants next ordered plaintiff to undergo medical evaluations (id. at ¶¶ 17, 20) and reassigned

6

him to monitor in-school suspension (id. at ¶¶ 15-16, 22-23), comparable to menial labor since, "[i]n prior years, this room had not been assigned to a licensed teacher and, whenever plaintiff was absent, a teacher's aide was assigned to substitute for him." Id. at ¶ 23.   The Complaint permits the reasonable inference that defendants believed that this experienced and capable professional was incapable of working a "a class of jobs or a broad range of jobs." Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 872 (2d Cir. 1998).   Since defendants could not easily terminate this tenured teacher, they placed him in one of the least-skilled positions in the school.   As this was not a job for a licensed teacher, see Complaint at ¶ 23, defendants believed that plaintiff was incapable of working in that "class of jobs."   Compare, Colwell, 158 F.3d at 647 ("To prove that they were regarded as substantially limited in their ability to work, the officers bore the burden of proving that the County 'perceived [them] to be incapable of working in a broad range of jobs' suitable for persons of their age, experience, and training").

As outlined in the Complaint, defendants also regarded plaintiff as suffering from substantial mental and cognitive impairments, also in violation of the Americans With Disabilities Act.   EEOC guidelines define "physical or mental impairment" as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2) (emphases supplied).   Plaintiff's perceived defective cognitive ability falls within this broad range of mental impairments.   The ability to function cognitively is a major life activity "that [is] of central importance to daily life." Capobianco, 422 F.3d at 56.   See also, Mattice v. Mem'l Hosp. of S. Bend, 249 F.3d 682, 684 (7th Cir. 2001) (plaintiff plead actionable ADA claim in alleging that employer "regarded him as having a substantial impairment 'in the major life activity of cognitive thinking'"); Kurten v. Hanger

Prosthetic, 402 F. Supp. 2d 572, 584 (W.D. Pa. 2005) ("Pursuant to the Plaintiff's cognitive impairment claims in the case sub judice, the Court observes that in Taylor v. Phoenixville School District, [184 F.3d 296, 307 (1999)] the Third Circuit determined that thinking is a major life activity. . . . Additionally, in Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 569 (3d Cir. 2002), the Third Circuit determined that 'general cognitive functions, such as concentrating and remembering, are major life activities'"). Particularly in light of his professional training and responsibilities at the school, including supervising school plays, in re-assigning plaintiff in 2006-07 to a position that required little skill, defendants perceived that this mental impairment was serious and long-term. 29 C.F.R. § 1630.2(i)(2). As the Complaint permits the fair inference that defendants perceived plaintiff to suffer from a protected disability, this motion should be denied.

In seeking dismissal, defendants argue that "plaintiff makes a conclusory allegation that he is regarded as having a disability." (Brief at 16). However, as defendants do not argue that the Complaint fails to place them on notice of the nature of the perceived disability, it states a cause of action. Defendants challenge plaintiff's allegations through the improper tactic of referencing documents that fall outside the Complaint. The laundry list of arguments in support of defendants' claim that plaintiff does not suffer from a perceived disability stem from these records. See, id. ("defendants have proffered substantial evidence of legitimate non-discriminatory reasons for plaintiff's reassignments to alternative classrooms . . .").

Defendants further argue that they have the right under Education Law § 913 to request that plaintiff submit to medical evaluations in light of his arrest for driving while ability impaired by drugs. As the Complaint says nothing about this arrest or the favorable resolution of this charge, defendants' argument is improper. Defendants' reliance on Doe v. Board of Education, 63 Fed.

8

Appx. 46 (2d Cir. 2003) only highlights this inappropriate tactic. A non-precedential summary order, <u>Doe</u> resolved a summary judgment motion, not a motion under Rule 12(b)(6), where the parties tested each others' evidence and placed adverse evidence in context.

### B. Plaintiff suffered an adverse employment action when defendants transferred him to the In-School Suspension room

A plaintiff suffers an adverse employment action when he experiences a "materially adverse change in the terms and conditions of employment." <u>Richardson v. New York State Dep't of Corr. Servcs.</u>, 180 F.3d 426, 446 (2d Cir. 1999). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000). A transfer to a "profoundly different" job in the workplace constitutes an adverse employment action even if the plaintiff does not suffer a loss in pay or benefits or tenure. <u>Id.</u> at 641 (citing <u>Rodriguez v. Board of Education</u>, 640 F.2d 362, 365-66 (2d Cir. 1980)). Put another way, a "radical change in the nature of the work" or a transfer that "results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career" is an adverse employment action. <u>Id.</u> <u>See also</u>, <u>Patane v. Clark</u>, 508 F.3d 106, 116 (2d Cir. 2007) ("[w]e have specifically recognized 'significantly diminished material responsibilities' as the sort of employment action 'sufficiently disadvantageous to constitute an adverse employment action' in a Title VII case").

Plaintiff went from chairing the Special Education department, teaching classes and directing school plays (Complaint at ¶ 10) to an unexplained assignment monitoring the "In-School

Suspension" room. He was also stripped of his school play duties. Id. at ¶¶ 15-16. The In-School Suspension assignment was not previously handled by a licensed teacher. Id. at ¶ 23. While defendants argue that plaintiff did not lose salary or benefits following this re-assignment, those factors are not dispositive. Fairly read, the Complaint alleges that monitoring In-School Suspension is not a position for a teacher, and the position requires relatively little skill. Under Galabya, this transfer radically changed plaintiff's job environment and represented a significant change in responsibilities amounting to a demotion. Compare, Rodriguez, 620 F.2d at 364-66 (junior high school art teacher suffered adverse employment action when transferred to elementary school where the two jobs were "profoundly different," rendering her professional experience "useless"); De La Cruz v. New York City Human Resources Admin., 82 F.3d 16, 21 (2d Cir. 1996) (transfer from an "'elite' division of DSS, which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth" was adverse employment action where "the transfer arguably altered the terms and conditions of his employment in a negative way").

### C. Plaintiff is a "qualified individual" under the ADA

"An individual is otherwise qualified for a job if she is able to perform the essential functions of that job, either with or without a reasonable accommodation." Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 135 (2d Cir. 1995). Viewed in the light most favorable to plaintiff, the Complaint alleges that he is highly qualified to teach Special Education at the high school level and that defendants granted him tenure in May 2005. (Complaint ¶¶ 10-11).

Defendants' argument that plaintiff was not qualified under the ADA stems entirely from evidence outside the four corners of the Complaint. Without an opportunity for discovery, this evidence places plaintiff in the worst possible light. (Def. br. at 18-19). As this tactic is

inappropriate under Rule 12, this Court should reject defendants' arguments and defer to the allegations in the Complaint.

## POINT II

### THE COMPLAINT ALLEGES AN ACTIONABLE EQUAL PROTECTION CLAIM

#### A.  The Complaint alleges that defendants discriminated against plaintiff in violation of § 1983

Employment discrimination plaintiffs may bring § 1983 actions on the basis of disability discrimination.  Costabile v. County of Westchester, 485 F. Supp. 2d 424, 433-35 (S.D.N.Y. 2007). "In order to state a 'class-of-one' claim, a plaintiff must show that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  Id. at 433-34 (citing, inter alia, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) and Garcia v. State University of New York, 280 F.3d 98, 109 (2d Cir. 2001) ("Where disability discrimination is at issue, the Fourteenth Amendment . . . proscribes government conduct for which there is no rational relationship between the disparity of treatment and some legitimate governmental purpose").

Like their arguments in opposition to the ADA and Rehabilitation Act claims, defendants move against the Equal Protection claim on the basis of facts outside the Complaint.  (Def. br. at 22). On this Rule 12 motion, the Court should accept as true the Complaint's allegations and draw all inferences in plaintiff's favor.  Under the appropriate standard, plaintiff properly alleges that defendants singled him out because of his perceived disability by subjecting him to irrational personnel actions in violation of the Equal Protection Clause.  Compare, Costabile, 485 F. Supp. 2d at 434 ("In the present case, plaintiffs have alleged that A. Costabile was 'singled out' on the basis

11

of his disability and, without any legitimate purpose, subjected to numerous, significant incidents of harassment, suspended for four days and ultimately discharged.  The Amended Complaint details the circumstances surrounding the harassment, suspension and discharge, and alleges that defendants' actions were taken in bad faith and with malicious intent.  Plaintiffs' Amended Complaint, therefore, provides defendants with sufficient notice of plaintiffs' Equal Protection claim").

### B.  Defendants are not entitled to qualified immunity

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights.  Where specific intent of a defendant is an element of plaintiff's claim under clearly established law, and plaintiff has adduced sufficient evidence of that intent to defeat summary judgment, summary judgment on qualified immunity grounds is inappropriate."  Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).  See also, Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001) ("where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law").

In the qualified immunity context, "an overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established."  LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998).  Plaintiff need not find a case on "all fours" to avoid qualified immunity.  "The absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not

12

clearly established. Indeed, it stands to reason that in many instances the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with the well-recognized applications of the right at issue on the part of government actors." Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 251 (2d Cir. 2001). See also, Hope v. Pelzer, 536 U.S. 730, 740-41 (2002) ("general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] been held unlawful.' . . . [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding").

The Complaint alleges the violation of a clearly-established right: disability discrimination in violation of the Equal Protection Clause. Although plaintiff brings this case under § 1983, the question is whether disability discrimination is against the law. In Back v. Hastings on Hudson, 365 F.3d 107 (2d Cir. 2004), the Court of Appeals rejected a qualified immunity challenge where the plaintiff alleged gender discrimination in violation of § 1983. The question in Back was not whether courts had previously recognized such a claim under that statute, but whether plaintiffs had the right to be free from gender discrimination. See, id. at 130 ("It was eminently clear by 2001, when the alleged discrimination took place, both that individuals have a constitutional right to be free from sex discrimination, and that adverse actions taken on the basis of gender stereotypes can constitute sex discrimination") (citing Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) [Title VII claim] and Weinstock v. Columbia University, 224 F.3d 33 (2d Cir. 2000) [Title VII claim]). The

13

Court of Appeals further noted that "[i]t was also eminently clear that it is unconstitutional to treat men and women differently simply because of presumptions about the respective roles they play in family life." Id. at 130 (citing Weinberger v. Wiesenfeld, 420 U.S. 636 (1975)). Like the unconstitutional claim in Back which the Supreme Court recognized in Weinberger, controlling authority foreshadows plaintiff's disability claim under § 1983. See, e.g., Garcia, 280 F.3d at 109.

In light of clearly-established law, viewing the allegations in the Complaint in the light most favorable to plaintiff, it was not objectively reasonable for defendants to discriminate against plaintiff on the basis of his perceived disability. Mandell, 316 F.3d at 385; Locurto v. Safir, 264 F.3d at 169. "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court. '[I]f there is such a dispute,' however, 'the factual questions must be resolved by the factfinder.'" Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007). Not only are defendants' factual arguments disputed, but they allegedly find support in documents and records that they have submitted on this motion in violation of Rule 12. At this stage of the case, qualified immunity cannot attach.

14

**CONCLUSION**

This Court should deny defendants' motion to dismiss and set this matter down for discovery.

Dated:    May 1, 2008

Respectfully submitted,

S/_____
STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiff

15